[Civ. No. 26555.   Second Dist., Div. One.   Aug. 5, 1963.]

BERNARD REICH et al., Plaintiffs and Appellants, v. EUGENE WEBB, JR., et al., Defendants and Respondents.

Vaughan, Brandlin & Roemer and Jack Corinblit for Plaintiffs and Appellants.

Whyte & Schifferman, John Whyte, Robert P. Schifferman, Thomas W. Clarke and Glen R. Miller for Defendants and Respondents.

WOOD, P. J.—The defendant Beverly Hills Federal Savings and Loan Association (hereinafter referred to as Beverly Hills Federal) and the defendants Mr. and Mrs. Webb, husband and wife (referred to as the Webbs), demurred to the first amended complaint. The demurrers were sustained without leave to amend, and a judgment of dismissal was entered. Plaintiffs appeal from the judgment.

The first purported cause of action alleged in substance as follows: Beverly Hills Federal was organized about 1936 as a federal savings and loan association under the name of Southland Federal Savings and Loan Association. About April 15, 1957, that name was changed to Beverly Hills Federal. Until early in 1961, defendant Mr. Webb was a director, the president, and the managing officer of Beverly Hills Federal; and defendant Mrs. Webb was also a director and officer thereof; and until said time they dominated and controlled the board of directors. The defendants Webb caused the defendant Southland Mortgage Corporation to be formed, and until early in 1961 substantially all its capital stock was owned by them, and they dominated and controlled the board of directors thereof.

The assets of Beverly Hills Federal are by law owned by the depositor-members in proportion to the amount of each member's deposits from time to time. Plaintiffs Reich are,

and have been for several years, depositor-members of Beverly Hills Federal. They bring this action on behalf of Beverly Hills Federal and all of its depositor-members who may wish to join in this action.

A proper business opportunity of Beverly Hills Federal is and has been the related business of making appraisals of property and of servicing loans; and that all the fees, commissions, and profits which are incident to the business of such appraisals and servicing of loans were and are a business opportunity of Beverly Hills Federal and its members.

Plaintiffs allege upon information and belief that Southland Mortgage Corporation was formed by defendants Webb for the purpose of appropriating to that corporation and ultimately to themselves the said business opportunities of Beverly Hills Federal in that the Webbs by their control of Beverly Hills Federal prohibited it from participating in said corporate opportunities; and pursuant to the same scheme caused Southland Mortgage to acquire the business of making all the appraisals and inspections connected with the servicing of loans for Beverly Hills Federal, and as a result thereof Southland Mortgage received all the fees, commissions, and profits to which Beverly Hills Federal was entitled and would have received if it had been permitted to engage in said business opportunities.

During the past five years, defendants Southland Mortgage and the Webbs have received fees, commissions, and profits in an amount not yet determined by plaintiffs, but all of said fees, commissions, and profits are rightfully the property of Beverly Hills Federal and its members. All the business, assets, and profits of Southland Mortgage have been the property of Beverly Hills Federal and are held by said defendants Southland and the Webbs as constructive trustees for Beverly Hills Federal.

On August 15, 1961 plaintiffs made a demand upon the board of directors of Beverly Hills Federal to prosecute an action seeking the same relief as that which plaintiffs demand herein. The board failed and refused to take any action thereon. The refusal was because Lytton Financial Corporation is the owner of Southland Mortgage and Lytton Savings and Loan Association and also dominates and controls the board of directors of Beverly Hills Federal.

The second purported cause of action alleged in substance, as follows: Plaintiffs incorporate herein by reference the allegations of the first cause of action. At all times herein

mentioned defendant Bart Lytton has been the president and a director of Lytton Financial Corporation (referred to as Lytton Financial) and has dominated and controlled Lytton Financial which is a holding company that holds the operating control of Lytton Savings and Loan Association. Early in 1961 the Webbs caused the assets and capital stock of Southland Mortgage to be sold and transferred to Lytton Financial, and a part of that transaction was the transfer of the control of Beverly Hills Federal and its board of directors from the Webbs to Lytton Financial. The sale and transfer of the control of Beverly Hills Federal took place contemporaneously with the sale of Southland Mortgage and was accomplished in part by the resignation of certain members of the board of directors formerly under the control of the Webbs and the substitution in their places of certain persons (Doe defendants) who are under the control of defendants Bart Lytton and Lytton Financial.

Plaintiffs allege upon information and belief that as a part of the said sale and transfer, the Webbs substituted Bart Lytton and other representatives of Lytton Financial as the proxy agents on proxies theretofore given to the Webbs by the members of Beverly Hills Federal.

Lytton Financial paid $1,500,000 to the Webbs in consideration for said sale and transfer.

The right to membership on the board of directors of Beverly Hills Federal and the right to control said association were unlawfully sold by the Webbs, and the proceeds of the sale are held in constructive trust for said association and its members by the Webbs.

The third purported cause of action alleged in substance, as follows: Plaintiffs incorporate herein by reference the allegations of the first and second causes of action. That after the sale of Southland Mortgage to Lytton Financial and the transfer of control of Beverly Hills Federal to Bart Lytton and Lytton Financial, and commencing about April 11, 1961, and continuing to date, the defendants Lytton and Lytton Financial in an unlawful exercise of control of Beverly Hills Federal caused Beverly Hills Federal to purchase from Lytton Savings certain notes and deeds of trust approximating $15,000,000 in face amount. Plaintiffs allege upon information and belief that by reason thereof the defendants Lytton and Lytton Financial have received profits, fees, and other monetary considerations from Beverly Hills Federal and its members in an amount not yet ascertained.

Since early in 1961, Lytton, Lytton Financial, and Lytton Savings have dominated and controlled the board of directors and the business of Beverly Hills Federal. Plaintiffs are unable to protect the interests of Beverly Hills Federal and its members except by commencing this action.

Beverly Hills Federal demurred to the first amended complaint on the grounds (1) that it did not state facts sufficient to constitute a cause of action; (2) that the court did not have jurisdiction over the subject of the action in that the Federal Home Loan Bank Board has promulgated complete rules and regulations for the federal savings and loan system which has exclusive jurisdiction of the control of Beverly Hills Federal, and the plaintiffs have failed to exhaust their administrative remedies to petition the Home Loan Bank Board for relief as to the purported charges herein; and (3) that the court has no jurisdiction of the person of Beverly Hills Federal in that it has no jurisdiction to make a determination as to the propriety or legality of any conduct of said defendant in its internal management operations under the rules and regulations of the Home Loan Bank Board.

Defendants Mr. and Mrs. Webb demurred on the grounds (1) that the first amended complaint did not state facts sufficient to constitute a cause of action; (2) that the court had no jurisdiction of the subject matter of said causes of action in that the plaintiffs had failed to exhaust administrative remedies available to them; (3) that the portion thereof which seeks to impose a constructive trust on fees, commissions, or profits received by said defendants more than three years before commencing the action is barred by the statute of limitations.

In a minute order the court stated that the demurrers were sustained, without leave to amend, for the reason that exhaustion of the administrative remedies is a jurisdictional prerequisite to resort to the courts in any matter relating to the operation and regulation of any federal savings and loan association; and the authority, as well as the responsibility, for such regulation lies with the Home Loan Bank Board.

It appears from the amended complaint that the controversy pertains to internal affairs of management, organization, and control of Beverly Hills Federal Savings and Loan Association. Some of the allegations indicating such a controversy are to the following effect: The plaintiffs bring

this action on behalf of themselves and Beverly Hills Federal and all of its depositors who may wish to join in this action. The defendants Webb, while they were directors and officers of Beverly Hills Federal and in control of its board of directors, formed Southland Mortgage for the purpose of appropriating to themselves, as principal owners of Southland, business opportunities which belonged to Beverly Hills Federal, namely, opportunities of making appraisals and inspections in connection with the servicing of loans. Said defendants did appropriate to themselves such opportunities and did receive therefrom fees, commissions, and profits which otherwise would have been received by Beverly Hills Federal. The Webbs, by reason of such conduct and their control of Beverly Hills Federal, prohibited Beverly Hills Federal from participating in those opportunities and from receiving such fees, commissions, and profits. In the sale of Southland Mortgage by the Webbs to Lytton Financial, the Webbs unlawfully included in the transaction (1) a transfer of the control of Beverly Hills Federal and the control of its board of directors, and (2) a substitution of B. Lytton and some of his representatives as the proxy agents on proxies which theretofore had been given to the Webbs by members of Beverly Hills Federal. After Lytton Financial obtained control of Beverly Hills Federal under said sale transaction, defendants Lytton Financial and B. Lytton in an unlawful control of Beverly Hills Federal caused it to purchase from Lytton Savings and Loan Association a large amount of notes and trust deeds, and as a result thereof Lytton Financial and B. Lytton have received fees and other monetary considerations.

Beverly Hills Federal is a federal savings and loan association. Such associations are authorized by an act of Congress. (Home Owners' Loan Act of 1933, 12 U.S.C.A., ch. 12, § 1464.) That act authorizes the Federal Home Loan Bank Board to issue charters for such associations. (*Ibid.*) The Home Loan Bank Board is an independent fiscal agency of the federal government (*Larwood Co.* v. *San Diego Fed. S. & L. Assn.*, 185 Cal.App.2d 450, 452 [8 Cal.Rptr. 362]) and is authorized to prescribe rules and regulations for the "organization" of federal savings and loan associations. Such rules and regulations are in the Code of Federal Regulations, title 12, chapter V, subchapter C, sections 541 to 555.11 inclusive.

■ As stated in *Larwood Co.* v. *San Diego Fed. S. & L.*

*Assn., supra,* page 452, the "Board has provided extensively detailed rules for the government of each and every act of the internal affairs of associations and under the law fully adequate powers are granted to Board for the enforcement of its orders, including even the right to take over exclusive management of the association for failure or refusal to obey the Board's orders. (*Fahey* v. *Mallonee,* 332 U.S. 245 [67 S.Ct. 1552, 91 L.Ed. 2030].)" It was stated further therein at pages 452 and 453: "The rules of Board for control of the association provide a complete system of specific procedure by which any person aggrieved by actions relating to the internal affairs of an association may file a petition with Board to be heard and have his grievance acted upon, accompanied by compulsory orders to the association involved, . . . ." ■ Judicial notice is taken of the rules of the board. (*Larwood Co.* v. *San Diego Fed. S. & L. Assn., supra,* p. 453.)

In *Woodard* v. *Broadway Fed. S. & L. Assn.,* 111 Cal.App. 2d 218 [244 P.2d 467], wherein plaintiff sought a determination of the validity of an election of directors of a federal savings and loan association, it was held that plaintiff was required to exhaust his administrative remedy. ■ It was said therein at pages 220 and 221: "Where an administrative remedy is provided by statute, relief must be sought from the administrative body, and this remedy must be exhausted before the courts will act. [Citation.] Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. [Citation.] ■ The doctrine of exhaustion of administrative remedies applies where a statute provides an administrative remedy, even though the terms of the statute do not make the exhaustion of the remedy a condition of the right to resort to the courts. [Citation.] ■ The doctrine, whenever applicable, requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention. [Citations.] '[I]t lies within the power of the administrative agency to determine in the first instance, and before judicial relief may be obtained, whether a given controversy falls within the statutory grant of jurisdiction. [Citations.].' " ■ It was also said in that case (p. 223): The rules and regulations of the Board "are comprehensive, explicit, and govern the operation of federal savings and loan associations from their inception to their dissolu-

tion. They have the force and effect of law and are binding on an association, its board of directors, and its members.''

■ As above indicated, the amended complaint does not pertain to the individual rights or claims of plaintiffs with respect to their deposits; but it pertains to their rights, and the rights of Beverly Hills Federal itself and all of its depositor-members with respect to the manner of servicing loans, the right to receive compensation therefor, the election of directors, and the transfer of proxies to persons other than those designated on the proxies. Those matters relate to the management of the internal affairs of Beverly Hills Federal. Since the rules and regulations of the Home Loan Bank Board contain detailed provisions regarding the government of such internal affairs, the plaintiffs are thereby afforded administrative remedies. It does not appear from the amended complaint that plaintiffs have exhausted such remedies. There is nothing in the record to indicate that they could have amended to include such an allegation.

The court did not err in sustaining the demurrers without leave to amend.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 1, 1963.