[Civ. No. 36418. Second Dist., Div. Five. Mar. 23, 1971.]

COAST AND SOUTHERN FEDERAL SAVINGS AND
LOAN ASSOCIATION of LOS ANGELES, Plaintiff and Appellant, v.
TRANS-COAST SAVINGS AND LOAN ASSOCIATION OF OXNARD,
Defendant and Respondent.

## COUNSEL

Hill, Farrer & Burrill and Robert L. Wilson for Plaintiff and Appellant.

Swerdlow, Glikbarg & Shimer and Richard H. Floum for Defendant and Respondent.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Arthur C. deGoede and Edmond B. Mamer, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**KAUS, P. J.**—This is an appeal from a judgment in favor of defendant Trans-Coast Savings and Loan Association of Oxnard ("Trans-Coast") which followed an order sustaining Trans-Coast's demurrer to plaintiff's second amended complaint without leave to amend.

The filing of this action was occasioned by the fact that on June 5, 1969, over plaintiff's protest, the savings and loan commissioner of the State of California ("commissioner") approved an application of the Oxnard Savings and Loan Association to change its name to Trans-Coast Savings and Loan Association of Oxnard. Thereafter Trans-Coast opened a branch office in Sherman Oaks, California just about the same time as plaintiff's predecessor, Coast Federal Savings and Loan Association of Los Angeles merged with Southern Federal Savings and Loan Association of Los Angeles ("Coast"). In some of its advertising defendant called itself simply "Trans-Coast Savings."

Plaintiff did not seek judicial review of the commisioner's order of June 5, 1969. Presumably such review would have taken the form of "administrative mandate." (Code Civ. Proc., § 1094.5.)

The complaint contains the usual allegations in an action for unfair competition, that is to say the competition between the parties, the secondary meaning of the word "Coast," likelihood of confusion to the detriment of plaintiff and the public and damage. The prayer is for an injunction, five million dollars in actual and twenty-five million in punitive damages.

We have been rather brief in our summary of the complaint, since there is no claim that, absent the impact of certain provisions in the Financial Code,[1] it is defective. ■ It is, however, defendant's position that plaintiff is barred by the effect of the commissioner's order of June 5, 1969, and plaintiff's failure to seek judicial review thereof.

The statutory scheme in which defendant seeks refuge must be briefly summarized. The division of the Financial Code which relates to savings

---

[1]Henceforth, unless otherwise designated, all statutory references are to the Financial Code.

and loan associations (§ 5000 et seq.) contains extensive provisions concerning the necessary steps to be taken when going into business as a new savings and loan association. Among other provisions, the law provides for a hearing on the question of whether "the name of the proposed association is the same as one already adopted or appropriated by any association then existing in this State, *or so similar thereto as to be likely to mislead the public.*" (§ 5511. Italics added.) Notice of the hearing must be given "to each association existing in this State." (§ 5510.)[2] If the commissioner finds a deceptive similarity in the proposed name, "he shall refuse to issue the certificate" approving the articles. (§ 5512.) Section 5512.5 provides that as part of the procedure of opening a new savings and loan association "or upon filing an amendment to the articles changing the name of a proposed association," the incorporators are to apply for a certificate of reservations of the name pursuant to section 310 of the Corporations Code. If a license is later issued by the commissioner it "shall be in the name reserved."

The Financial Code further requires a separate license for each branch of the savings and loan association (§ 6000 et seq.). Finally, if an association seeks to change its name, it must receive the approval of the commissioner for such change "upon the same notice, proceedings, upon the same grounds, and subject to the same rules, presumptions and restrictions as are set forth in article 1 of this chapter in relation to the matters of the name of an association." (§ 5651.)[3]

Section 5258 provides for judicial review of all orders of the commissioner provided it is sought within 60 days.

In the case at bar the original complaint, filed August 13, 1969, simply ignored the fact that on June 5 the commissioner had overruled plaintiff's objections to defendant's proposed name change. Defendant's demurrer to that complaint raised the legal issues to be discussed in this opinion. By the time the second amended complaint was filed plaintiff was able to allege —and did allege—that on September 18, 1969, the commissioner had denied its petition for reconsideration and further hearing and, on

---

[2]There is substantial question whether the notice provision of section 5510 entitled plaintiff, as a federal savings and loan association, to receive notice as a matter of right. An inspection of certain definitional sections, particularly sections 5055 and 5057 indicates that the use of the word "association," without more, does not include federal savings and loan associations. See, however, section 11000.

[3]We interpret this broad language to include the requirement of compliance with section 5512.5, relating to reserving a new name with the Secretary of State. (See also Corp. Code, § 102; Fin. Code, § 5500; cf. 7 Ops. Cal. Atty. Gen. 157.)

November 19, 1969, had denied plaintiff's petition requesting the commissioner to issue a cease and desist order against defendant.[4]

It is perfectly clear that the trial court was of the belief that somehow the statutory scheme which we have outlined prevented plaintiff from obtaining any relief in its common law action for unfair competition. It is not clear, however, whether the court's theory was that the relevant provisions of the Financial Code gave the commissioner so-called primary jurisdiction to determine the issue of confusion and that such determination would be conclusive on the parties in any ensuing common law action for unfair competition,[5] or whether it believed that the Legislature intended to abolish such litigation between savings and loan associations,[6] or whether it felt plaintiff was precluded from persuing this litigation merely because it had failed to seek judicial review of the June 5 order.[7]

Defendant, of course, will accept an affirmance on any theory. For that reason, perhaps, we cannot be sure whether its brief is an appeal to the primary jurisdiction theory, to the doctrine of exhaustion of administrative remedies or to a supposed exclusive administrative jurisdiction.[8]

It is our view that none of these theories bar plaintiff's right to pursue this action. ▪ This results from our conviction, gained from a reading of the applicable statutory provisions, that it was not the legislative intent

---

[4]This latter allegation was added by interlineation at the time of the hearing on the demurrer to the second amended complaint heard November 26. We express no view concerning the commissioner's power to entertain plaintiff's petitions; nor do we imply that, had they been entertained, the 60-day period provided for in section 5258 would have started to run anew.

[5]See 2 California Jurisprudence, Second Edition, Administrative Law, section 91, footnote 10.

[6]As, for example, the Workmen's Compensation Law abolished personal injury litigation in the courts between those coming within its purview. (See Lab. Code, §§ 3601, 3852, 5300.)

[7]In other words, that it is a condition to obtaining judicial relief from the effects of unfair competition, that the plaintiff—successfully or not—do everything in its power to prevent the commissioner from authorizing an allegedly confusing name. If this thought was the reason for the superior court's ruling, it must have been based on the premise that administrative mandate (Code Civ. Proc., § 1094.5) is, itself, an administrative remedy which must be exhausted. No California case so holding has been found. (See 2 Am.Jur.2d, Administrative Law, § 606.)

[8]For a short analysis comparing these three principles see 2 American Jurisprudence, Second Edition, Administrative Law, section 790. Defendant, of course, cannot be blamed. The confusion exists in many reported cases. Thus, it has been said of a case on which defendant places great reliance, *Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218 [244 P.2d 467], that "[t]he court's language of exhaustion to designate what is here called primary jurisdiction is in conformity with the language which is customary in a good many state courts." (Davis, Administrative Law Treatise, § 19.08.)

that the proceedings before the commisioner were to have any effect on actions for unfair competition between savings and loan associations.[9]

Our outline of the statutory scheme has referred to section 5512.5 of the Financial Code. For convenience the section is set forth in full in the footnote.[10] It is evident that the Legislature intended to dovetail the provisions of the Financial Code relating to the names—or changes of names—of savings and loan associations and those of section 310 of the Corporations Code relating to deceptively similar names of other corporations. The determination of whether or not a new name of a savings and loan association is deceptively confusing with an existing one, was taken out of the hands of the Secretary of State and entrusted to the commissioner. Further, obviously because of the length of time which proceedings before the commissioner may take, the 30-day period[11] provided for by section 310 of the Corporations Code during which a new name could be reserved, was lengthened to a maximum of one year and six months.

We thus have clear evidence that the Legislature wrote the relevant sections of the Financial Code with section 310 of the Corporations Code in mind. Yet no where in the Financial Code do we detect the slightest evidence that it intended to abrogate, in the case of savings and loan associations, the last paragraph of section 310 of the Corporations Code which reads as follows: "The use by a corporation of a name in violation of this

---

[9]Except, of course, the purely negative effect which would result from the commissioner's refusal to permit an association to use a particular name.

[10]"Upon filing an application for approval of proposed articles of incorporation with the commissioner under Section 5507, or upon filing an amendment to the articles changing the name of a proposed association, the incorporators shall file an application for a certificate of reservation of the name of the proposed association as set forth in the articles of incorporation with the Secretary of State pursuant to Section 310 of the Corporations Code. The application filed with the Secretary of State shall recite the fact of the pendency of the application filed under Section 5507 and the Secretary of State shall issue a certificate of reservation upon such an application for a certificate and upon payment of any required fee. Nothwithstanding the provisions of Section 310 of the Corporation Code, the name contained in the certificate of reservation shall be reserved to the applicant until the commissioner refuses to issue a certificate of approval, or, if a certificate of approval is issued, as long as the certificate of approval continues in force or effect, or for a period of up to one year from the date when the application is filed in accordance with this article, pending the applicant's fulfillment of any requirements precedent to opening for business. The Secretary of State may, upon the request of the applicant and the approval of the commissioner, extend the reservation of the name for an additional six months.
"If a license is issued by the commissioner pursuant to Article 2 of this chapter, the license shall be in the name reserved."

[11]Increased to 60 days by the 1969 Legislature.

section may be enjoined notwithstanding the filing of its articles by the Secretary of State."

Defendant points out that the distinction between corporations generally and savings and loan associations in particular is that there is no room for a hearing under section 310 of the Corporations Code, while the Financial Code does provide for one.[12] While this distinction would have validity if the question were whether the Legislature had the power to prescribe that the administration determination allowing the use of an allegedly misleading name is conclusive, it is immaterial in the absence of evidence that such was the legislative purpose. Reading the applicable sections of the Financial Code we cannot find that the Legislature intended to accomplish more than just this: that as part of his duties to police the savings and loan industry, the commissioner was given the power to make an initial determination whether a new name would mislead the public. If he did so determine, that was to be the end of it, subject of course to a review for abuse of discretion under section 1094.5 of the Code of Civil Procedure. In this way the threat of unfair competition could be nipped in the bud before harm to the public ensued.[13] If the Legislature had intended that the administrative proceedings, which on their face appear to be designed for the sole purpose of facilitating the commissioner's housekeeping functions in the savings and loan industry, were to have an effect on previously recognized common law rights, it would have said so in explicit terms.

Defendant's cases are easily distinguishable. It relies chiefly on *Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218 [244 P.2d 467] and *Reich* v. *Webb,* 218 Cal.App.2d 862 [32 Cal.Rptr. 803]. The *Woodard* case involved an attempt to have the superior court hold invalid the election of certain defendants to the board of directors of the defendant

---

[12]Defendant does not claim, nor could it, that the hearing afforded by the Financial Code is the equivalent to a trial in an adversary proceeding. As we pointed out in *Beverly Hills Fed. S. & L. Assn.* v. *Superior Court,* 259 Cal.App.2d 306, 321 [66 Cal.Rptr. 183], an objector at such a hearing "is not an adversary party in the sense in which that terminology is used in litigation. The commissioner (or his surrogate, a hearing officer) in his conduct of the hearing occupies a dual role as a quasi-judicial officer and as an investigatory executive agent." As such, we held in that case, he had committed no impropriety in requesting ex parte communications from the applicant involved.

[13]It is obvious that harm to the public is not remedied by an action brought by another association unless the plaintiff gets a very early injunction. Even an action for an injunction brought by the Attorney General under section 3369 of the Civil Code may merely have the effect of a belated closing of the barn. It therefore seems wise for the Legislature to have authorized the commissioner to stop probable confusion before it even starts.

association. The association in question was organized under the provisions of the Home Owners' Loan Act of 1933. The plaintiffs had never attempted to have the home loan bank board, which administered associations organized under the act, act in the matter. Pointing out that the election in question had to be held under a charter and bylaws in conformity with the board's rules and regulations and that applicable federal statutes and regulations entrusted controversies with respect to the internal management of associations to the board, the appellate court declared that the superior court was without jurisdiction to act. Similarly in the *Reich* case, the plaintiffs were turned away because the dispute there involved also related "to the management of the internal affairs of Beverly Hills Federal." (*Reich* v. *Webb, supra,* 218 Cal.App.2d at p. 869.) Obviously the dispute between plaintiff and defendant has nothing to do with the internal management of the defendant association.

The judgment is reversed.

Stephens, J., and Frampton, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1971. McComb, J., was of the opinion that the petition should be granted.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.