[Civ. No. 3719. Fifth Dist. Oct. 31, 1979.]

JACK E. WILKINSON, Plaintiff and Appellant, v.
NORCAL MUTUAL INSURANCE COMPANY, Defendant and
Respondent.

COUNSEL

Paul Eisler and Victoria J. DeGoff for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Allan N. Littman, C. Douglas Floyd and D. Peter Harvey for Defendant and Respondent.

OPINION

BROWN (G. A.), P. J.—This appeal is pursued by Jack E. Wilkinson, M.D., from a summary judgment and judgment of dismissal granted in favor of the defendant, Norcal Mutual Insurance Company, a medical malpractice insurance carrier. The sole issue is whether Wilkinson exhausted his administrative remedies pursuant to Insurance Code section 1858 et seq. and section 11587[1] before filing his second amended complaint.

Wilkinson is a licensed physician and surgeon who has practiced his profession in Fresno for approximately 25 years, and prior to the events herein he enjoyed staff privileges at the major hospitals in the Fresno area.

---

[1]All code references shall be to the Insurance Code unless otherwise indicated; sections 1858, 1858.05, 1858.3 and 1858.4 are attached hereto as appendix 1 for ready reference; section 11587 is attached as appendix 2. Section 1858.3 reads as it did when the action was decided below. The section was amended in 1977, the amendments becoming effective as of January 1, 1978.

Appellant had been insured by Travelers Insurance Company; that company canceled his policy. After a period of time appellant's staff privileges were terminated at various Fresno hospitals because he was not covered by professional liability insurance. Thereafter he applied to Norcal for insurance which, after first denying the application, on April 30, 1976, issued a policy of medical malpractice insurance subject to the following conditions: (1) the policy would contain a deductible of $10,000 per claim, (2) a 100 percent premium surcharge would be required, (3) coverage for neurosurgery and orthopedic surgery would be excluded. Appellant objected to the conditions, and under protest paid the premium. From all that appears the policy or renewals thereof is still in effect. Appellant's staff privileges with the limitation that he would not perform neurosurgery or orthopedic surgery were reinstated at the several hospitals.

On May 13, 1976, appellant filed his complaint for an unspecified amount of damages against Norcal by reason of the conditions imposed in the policy.[2]

On March 21, 1977, appellant filed his second amended complaint in which he alleged for the first time that he had exhausted all administrative remedies against Norcal.

Norcal moved for a summary judgment on two grounds: (1) that appellant had not exhausted the intracompany remedies by way of appeal provided by Norcal's underwriting guidelines, and (2) that appellant had not exhausted his governmental administrative remedies under sections 1858 et seq. and 11587. The trial court granted the summary judgment solely on ground (2), holding as to ground (1) that an issue of fact existed with respect to whether appellant did in fact exhaust Norcal's internal remedies. Since we will affirm the judgment on ground (2) we shall confine our discussion to that ground.

It is established by the declarations that on March 10, 1977, 11 days before filing the second amended complaint, appellant's counsel wrote to the Department of Insurance requesting a hearing before the Insurance Commissioner pursuant to section 1858 on the "following grounds":

---

[2]There were a number of other alleged causes of action against Travelers Insurance Company, the Fresno County Medical Society and a number of fictitiously named doctors for having deprived Wilkinson of his ability to practice his profession. We are not concerned with those causes of action in this appeal.

"1. Dr. Wilkinson is a person aggrieved by the rate charged;

"2. Dr. Wilkinson is a person aggrieved by the rating plan;

"3. Dr. Wilkinson is a person aggrieved by the rating system;

"4. Dr. Wilkinson is a person aggrieved by the underwriting rule followed by Norcal;

"5. Dr. Wilkinson is a person aggrieved by the underwriting rule adopted by Norcal.

"And, in particular that the insurance premium charged is excessive, inadequate, and/or unfairly discriminatory."

This request was never answered in writing nor did the Insurance Commissioner take formal action in response thereto. However, in a declaration filed by Paul A. Eisler, counsel for appellant, in opposition to the motion for summary judgment, he states: "Since the writing of my letter of March 10, 1977 (Exhibit 'K') to the Department of Insurance I have had several telephone conversations with Mr. Loeb, and I was advised by him that any further action by the Department of Insurance either under Insurance Code § 1858 or § 11587 would not benefit the Plaintiff, Dr. Wilkinson, in this matter and that, therefore, the Department of Insurance feels that no further action should be taken by it as the administrative remedy, if any there is, would not aid Plaintiff but possibly cause Plaintiff further detriment as NORCAL had the choice of cancelling Plaintiff's insurance."

In sum, appellant contends on this appeal that the trial court erred in granting Norcal's motion for summary judgment because:

(1) Appellant exhausted all available governmental remedies; in any event it would have been futile to pursue the administrative remedies further because

(a) The Department of Insurance told appellant's counsel in a telephone conversation that it did not intend to pursue the matter further and that the department could do nothing further for him.

(2) Were appellant to have pursued an administrative remedy under section 11587 any further he would have suffered irreparable injury and was therefore not required to continue with it.

(3)   Section 1858 does not provide an adequate or effective administrative remedy to an aggrieved individual, and appellant was therefore not required to pursue one under it.

(4)   In any event summary judgment is improper because there was a triable issue of fact as to whether the administrative remedies were exhausted.

(5)   Assuming summary judgment was proper, the action should have been abated and not dismissed.

■   It is well settled that a jurisdictional prerequisite to review by the courts is the exhaustion of all administrative remedies. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715].) As the *Abelleira* court stated: "The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts. We are here asked to sanction its violation, either on the ground that a valid exception to the rule is applicable, or that despite the uniformity with which the rule has been applied, it may be disregarded by lower tribunals without fear of prevention by the higher courts. This last point cannot be too strongly emphasized, for the rule will disappear unless this court is prepared to enforce it. To review such action of a lower court only on appeal or petition for hearing would permit interference with the administrative proceeding pending the appeal or hearing, with the effect of completely destroying the effectiveness of the administrative body. The writ of prohibition can alone operate surely and swiftly enough to prevent this unfortunate result; and only if we recognize that the rule is jurisdictional will it be uniformly enforced. Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Id.,* at p. 293.) (See also *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 88-89 [143 Cal.Rptr. 441]; *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 431-432 [95 Cal.Rptr. 860].)

It is also established that the exhaustion of administrative remedies "requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and

awaiting their final outcome before seeking judicial intervention." (*Woodard* v. *Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218, 221 [244 P.2d 467]; see *McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538-539 [109 Cal.Rptr. 149]; *Reich* v. *Webb* (1963) 218 Cal.App.2d 862, 868 [32 Cal.Rptr. 803].)

■ Turning to appellant's contentions seriatim, he relies primarily upon the hearsay statement to his counsel by telephone from the employee of the Department of Insurance to the effect that they could not help his client to support his argument that appellant exhausted his administrative remedies and that further efforts to exhaust the administrative remedy would have been futile. (See *People* v. *Superior Court (Tidwell)* (1979) 91 Cal.App.3d 95, 102 [154 Cal.Rptr. 54] — futility exception is a narrow one.) Appellant claims that it would have been futile because the state's machinery could provide no "practical benefit."

It is first to be noted that section 1858.05 gives the Insurance Commissioner 30 days either by order to deny the hearing or proceed to hearing.[3] It further provides that complainant may petition the court for an order to compel compliance with the section. In the case at bench appellant neither waited the 30 days nor petitioned the court to compel compliance. Instead he filed his second amended complaint 11 days after mailing the letter of March 10. It is apparent that the provision for a petition to compel compliance is part of the administrative remedy which was not exhausted.

Moreover, the statement from an employee of the insurance company to the attorney for appellant is hearsay and inadmissible to prove the truth of the facts therein asserted, and the trial court was justified in disregarding it. Code of Civil Procedure section 437c provides in relevant part that "[s]upporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." ■ Hearsay statements are inadmissible, and there can be no waiver by silence of the right to object on appeal to inadmissible evidence in a summary judgment proceeding. (*Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 815-817 [116 Cal.Rptr. 412].)

[3]Under section 11587 the Insurance Commissioner also has 30 days to act, and if a hearing is granted it is conducted pursuant to section 1850 et seq. (see subd. (a) of § 11587).

If the doctrine requiring exhaustion of administrative remedies could be satisified by an oral hearsay statement from an employee of the governmental administrative agency involved the doctrine would be rendered meaningless and ineffective. The sound policy and administrative reasons upon which the doctrine is bottomed and the salutary purposes it serves (see *Abelleira v. District Court of Appel, supra,* 17 Cal.2d at pp. 292-295) should not be permitted to be thwarted by this type of evidence. *Abelleira* supports this view. In rejecting the assertion that the administrative appeal in that case would be futile, the court said: "One final argument of the employers to justify disregard of the administrative remedy may be noticed. They assert that the commission has already decided cases on similar facts against their present position, and therefore that an appeal in the instant case would be fruitless. This is, indeed, the slender thread upon which their entire case hangs. But again their position is unsound in principle and unsupported by the better authorities, for it was early perceived that to countenance this view would break down the rule of exhaustion of remedies. In substance the contention is that if they learn upon hearsay or by analogy that the administrative board may take a certain action, the board may be ignored and its action treated as already taken. We should all be very much surprised, no doubt, to find such an assertion made in the judicial field. One might attempt, for example to bring an original suit in the Supreme Court on the theory that the local superior judge was possessed of a particular opinion opposed to the views of the plaintiff, but he would receive scant consideration. The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide. This argument, though successful in a few cases, has been rejected by the weight of authority." (*Id.,* at pp. 300-301.) (See also *People v. Superior Court (Tidwell), supra,* 91 Cal.App.3d 95, 102, 104.)

Appellant relies upon *Hollon v. Pierce* (1967) 257 Cal.App.2d 468 [64 Cal.Rptr. 808]. It is distinguishable. In the *Hollon* case a discharged school district employee had sought relief from the state Fair Employment Practices Commission for nearly a year before filing suit. The administrative record was extensive and it made clear by notations in the file which was introduced in evidence that the agency was taking no action "pending [a] civil action." Thus the character and quality of proof was different, and the record demonstrated with certainty that the

proceeding had come to a complete halt; the state supplying no practical benefit in terms of job restoration.

Appellant next contends that to have pursued the administrative remedy under section 11587 would have caused him irreparable injury and therefore it was excused. This argument is grounded upon the provision of that section which, upon a finding that the insurance rate is not justified, commands the Insurance Commissioner to "order the insurer to either reduce the rate to the level deemed by him to be justified or cancel the policy upon 60 days notice to the insured. . . ." Appellant argues that for his insurance to have been canceled would have caused him irreparable injury because it would have resulted in depriving him of staff privileges at the hospitals and impair his ability to earn a livelihood. (See *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 822-823 [140 Cal.Rptr. 442, 567 P.2d 1162].)

We reject the argument as predicated upon an erroneous interpretation of the statute and as too speculative. ■ The argument assumes that the above quoted language requires the Insurance Commissioner to give Norcal the option to either reduce the rate or cancel the policy. We believe it is more in harmony with the statutory scheme and purpose of the legislation to interpret the language as vesting this option in the Insurance Commissioner. Given the purpose of the legislation, which is to assure malpractice coverage at a reasonable rate and to prevent rate gouging, it is difficult to believe that the Insurance Commissioner would give an insurance company a chance to bow out of the coverage instead of ordering a reduction in the rate charged, particularly when the insured may not be able to procure malpractice insurance elsewhere. In any event, to adopt appellant's argument would require speculation that (1) the Insurance Commissioner would have found Norcal's premium unjustified as applied to him, (2) the commissioner would have exercised his option in favor of cancelling the policy instead of requiring the insurer to reduce the rate, (3) exercising that option, Norcal would have canceled the policy, and (4) appellant would not have been able to obtain insurance elsewhere. ■ An exception to the jurisdictional requirement of exhaustion of administrative remedies will not be applied where, as in this case, the asserted injury is "purely speculative." (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, 297; *United Insurance Co.* v. *Maloney* (1954) 127 Cal.App.2d 155, 158-161 [273 P.2d 579].)

Next appellant argues that section 1858 does not provide an adequate remedy to an aggrieved individual. ▮ He first urges that the section is not intended to provide an administrative remedy for an individual grievance but that the section is only concerned with an individual grievance insofar as it affects the public in general. We reject the argument. The section expressly provides a remedy for "[a]ny person aggrieved by any rate charged. . . ." While the orders issued pursuant to a section 1858 et seq. proceeding may have a general impact, they are likewise of assistance to the aggrieved individual. Prohibiting future use of an entire rating system is a penalty with which appellant is confronting Norcal. Section 1858.3 also allows the Insurance Commissioner to order Norcal not to exclude certain coverage from appellant's insurance policy. Further, if the violation deals with provisions other than rate, the Insurance Commissioner may issue an order to such insurer specifying in what respect such violation exists and requiring compliance within a reasonable time thereafter. Finally, if appellant convinced the Insurance Commissioner that Norcal's actions were invalid and "willful" the commissioner could suspend or revoke Norcal's license. It is also noted that effective January 1, 1978, subdivision (a) of section 1858.3 was amended to provide "[t]he commissioner may, in addition to such order, direct the insurer or rating organization to take such other corrective action as he may deem necessary and proper."[4]

Appellant also argues the administrative remedies are inadequate and should be excused because he cannot recover damages; therefore the statutory provisions do not provide all of the relief he desires. A similar contention was addressed in *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 475-477 [131 Cal.Rptr. 90, 551 P.2d 410]. ▮ The Supreme Court in *Westlake* held that even though there was an absence of a damage remedy in the administrative procedure which made ultimate resort to the courts inevitable, exhaustion was required. Though that case dealt with the internal remedies of an organization the same principles are applicable here. At pages 476-477, the Supreme Court set forth at length the salutary purposes that would be served by applying the exhaustion doctrine. They apply with equal force to this case.

▮ Appellant argues that the determination of whether appellant exhausted his administrative remedies is a question of fact and should

---

[4]Further, under section 11587 the Insurance Commissioner can order a reduction of the rate on an individual policy.

not have been decided upon a summary judgment motion. It is, of course, hornbook law that a motion for summary judgment is an improper vehicle for resolving disputed issues of fact (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556 [122 Cal.Rptr. 264].) However, the facts here are undisputed. Appellant has failed to point to one fact essential to the disposition of the legal issues upon which there is a conflict in the admissible evidence. What appellant is really contesting is the legal conclusion arrived at by the court as a result of the application of legal principles to those undisputed facts. Legal issues are properly resolved in a motion for summary judgment. (*People* v. *Superior Court (Tidwell), supra,* 91 Cal.App.3d 95, 101-102.)

■ Lastly, appellant claims that, assuming he should have exhausted his administrative remedies, the trial court should have abated the action as having been commenced prematurely rather than grant the motion for summary judgment and dismiss the action. The contention is without merit. Failure to exhaust an administrative remedy is a jurisdictional, not a procedural, defect (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 293) and dismissal is proper where the court lacks jurisdication. (See *Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267 [148 Cal.Rptr. 645]; *Woodard* v. *Broadway Fed. S. & L. Assn., supra,* 111 Cal.App.2d 218; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 973, p. 2549.)

The judgment is affirmed.

Hopper, J., and Zenovich, J., concurred.

## Appendix 1

Insurance Code section 1858 provides: "Any person aggrieved by any rate charged, rating plan, rating system, or underwriting rule followed or adoped by an insurer or rating organization may request the insurer or rating organization to review the manner in which the rate, plan, system, or rule has been applied with respect to insurance afforded him. Such request may be made by his authorized representative, and shall be written. If the request is not granted within 30 days after it is made, the requestor may treat it as rejected. Any person aggrieved by the action of an insurer or rating organization in refusing the review requested, or in failing or refusing to grant all or part of the relief requested, may file a written complaint and request for hearing with the commissioner, specifying the grounds relied upon. If the commissioner has information concerning a similar complaint he may deny the hearing. If he believes that probable cause for the complaint does not exist or that the complaint is not made in good faith he shall deny the hearing. Otherwise, and if he finds that the complaint charges a violation of this chapter and that the complainant would be aggrieved if the violation is proven, he shall proceed as provided in Section 1858.1."

Section 1858.05 provides: "Whenever a written complaint and request for hearing with the commissioner has been filed pursuant to Section 1858, and the complaint concerns medical malpractice insurance, the commissioner shall within 30 days either by order deny the hearing or proceed as provided in Sections 1858.1 or 1858.2. The complainant may petition the court for an order to compel compliance with this section."

At the times pertinent herein section 1858.3 provided: "If after a hearing pursuant to Section 1858.2 the commissioner finds:

"(a) That any rate, rating plan or rating system violates the provisions of this chapter applicable to it, he may issue an order to the insurer or rating organization which has been the subject of the hearing specifying in what respects such violation exists and stating when, within a reasonable period of time, the further use of such rate or rating system by such insurer or rating organization in contracts of insurance made thereafter shall be prohibited.

"(b) That an insurer, rating organization, advisory organization, or a group, association or other organization of insurers which engages in joint underwriting or joint reinsurance, is in violation of the provisions of this chapter applicable to it other than the provisions dealing with rates, rating plans or rating systems, he may issue an order to such insurer, organization, group or association which has been the subject of the hearing specifying in what respects such violation exists and requiring compliance within a reasonable time thereafter.

"(c) That the violation of any of the provisions of this chapter applicable to it by any insurer or rating organization which has been the subject of hearing was wilful, he may suspend or revoke, in whole or in part, the certificate of authority of such insurer or the license of such rating organization with respect to the class of insurance which has been the subject matter of the hearing.

"(d) That any rating organization has wilfully engaged in any fraudulent or dishonest act or practices, he may suspend or revoke, in whole or in part, the license of such organization in addition to any other penalty provided in this chapter."

Section 1858.4 provides: "In addition to other penalties provided in this code, the commissioner may suspend or revoke, in whole or in part, the license of any rating organization or the certificate of authority of any insurer with respect to the class or classes of insurance specified in such order, which fails to comply within the time limited by such order or any extension thereof which the commissioner may grant, with an order to the commissioner lawfully made by him pursuant to Section 1858.3 and effective pursuant to Section 1858.6."

## Appendix 2

Insurance Code section 11587 provides: "(a) Any insured person who holds a certificate or license issued pursuant to Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code, a license issued pursuant to the Osteopathic Initiative Act, or a license as a health facility pursuant to Chapter 2 (commencing with Section 1250) of Division 2 of the Health and Safety Code, who alleges to be aggrieved by any medical malpractice insurance rate adopted by an insurer licensed pursuant to Part 2 (commencing with Section 680) of Division 1 may, in writing, request of such insurer an explanation of the composition of such rate and of its application to him. If such explanation is alleged to be inadequate, insufficient, or is not provided within 30 days after making the request therefor, such person may file a simple petition for hearing with the commissioner. The commissioner shall conduct public hearings within 15 days after a petition has been filed with him to determine whether such rate is justified, according to the provisions of Chapter 9 (commencing with Section 1850) of Part 2 of Division 1.

"The public hearing shall be conducted pursuant to Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except that any affected person, or his legal representative, shall, upon application to the commissioner at least five days prior to the hearing, be allowed to reasonably participate in the examination of the insurer. The commissioner shall determine within 45 days after such petition has been filed whether such rate is so justified. In the event the commissioner finds such rate, or some part thereof, not to be so justified, he shall inform the insurer, in detail, of the facts upon which he bases his conclusion and of the specific provisions of law upon which he relies. In addition, the commissioner shall order the insurer to either reduce the rate to the level deemed by him to be justified or cancel the policy upon 60 days notice to the insured and tender to the insured all of the then unearned premium due such insured. Such order shall be effective 15 days from the date thereof, upon which date such insurer shall mail any cancellation notice required to be given an affected insured.

"(b) For the purposes of this section, two or more petitions received by the commissioner alleging grievances concerning one rate adopted by an insurer shall be considered, heard, and determined simultaneously. If additional such petitions alleging substantially similar grievances are received by the commissioner after the issuance of a determination by him upon earlier filed petitions as herein provided, such additional petitions shall be automatically subject to such determination, which fact the commissioner shall communicate in writing to the petitioner and his insurer. The commissioner shall disregard and deny any petition alleging grievances based upon any rate increase not greater than 10 percent of the annualized rate previously charged the petitioner.

"(c) Prior to such public hearing the insurer shall submit to the commissioner such information as the commissioner may require to justify the rate increase. Such information shall be a public record and shall be made available upon request to any person, provided that the requesting person shall pay the reasonable cost for the reproduction of such information.

"(d) The commissioner shall have the authority to subpoena all books, records, data, and persons deemed necessary to make such a finding pursuant to subdivision (a).

"(e) The provisions of this section shall remain in force and effect until December 31, 1977, and on that date, this section is repealed, except that they shall continue in effect from year to year upon a finding by the insurance commissioner 30 days prior to the beginning of each year that there still exists a malpractice insurance crisis."