[No. D004820. Fourth Dist., Div. One. Aug. 19, 1987.]

WILLIAM GREEN, Plaintiff and Respondent, v.
CITY OF OCEANSIDE, Defendant and Appellant.

**COUNSEL**

Daley & Heft, Dennis W. Daley and Dan Groszkruger for Defendant and Appellant.

Edward J. Cooper, City Attorney (Santa Ana), as Amicus Curiae on behalf of Defendant and Appellant.

Larabee & Loadman and Dale R. Larabee for Plaintiff and Respondent.

**OPINION**

**WIENER, Acting P. J.**—The City of Oceanside (City) appeals a $125,000 judgment entered on the jury verdict in favor of plaintiff William Green on his amended complaint seeking damages for wrongful termination and for violating the covenant of good faith and fair dealing. The City asserts the court lacked jurisdiction because Green failed to exhaust his administrative remedies, Green's award of damages for emotional distress was improper because such damages were subject to the exclusive remedy rule of worker's compensation, the jury was improperly instructed that they could substitute their own judgment for that of the employer on what is or is not good faith and fair dealing and what constitutes good cause for termination and the trial court erred in not granting the City's nonsuit motion because Green did not present evidence sufficient to make out a prima facie case of wrongful termination. We reject these arguments and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I

We preface the following factual summary with the comment that we have varied the form of this opinion to highlight the procedural uniqueness of this case. Rather than stating the facts which immediately follow in the light most favorable to the judgment we state them in a neutral manner

drawn from the entire record in order to fully appreciate City's view of this case. As so stated this is clearly—at least as seen prospectively—not a particularly strong plaintiff's case even before the typical jury which we believe will generally be more sympathetic to an employee than an employer in a wrongful termination/bad faith case. The apparent weakness of plaintiff's case may explain why the City decided to forego technical defenses in order to submit the matter on the merits to 12 persons representing the collective conscience of the community. From a political perspective this was probably a thoughtful and socially healthy decision. From a legal perspective, however, it eviscerated City's principal arguments in this appeal. Interestingly, with City's keener retrospective appreciation of the facts when examined in the light most favorable to the judgment, City does not argue that the judgment is factually unsupported. City limits its sufficiency of the evidence argument which we reject (see *Discussion*, pt. III, pp. 225-227, *post*) to its contention that the court erred in denying its nonsuit motion made at the conclusion of plaintiff's case.

## II

Green worked as a janitor for the City from 1970 to 1981, when the City's contract with a private company for building maintenance resulted in the elimination of his job. In July 1981 Green, a permanent employee, exercised his seniority rights and transferred into City's streets department. In so doing Green "bumped" another employee.

Green began doing weeding, shoveling and cement work. He was soon made a dump truck driver. He was not asked if he had any experience driving a dump truck and he was not instructed on how to operate one. Between August 31, 1981, and September 2, 1983, Green was involved in six dump-truck-related accidents: On August 31, 1981, he did not set the parking brake on an asphalt-loaded truck with the result it rolled unattended into another City vehicle.

On December 17, 1982, the open door of his dump truck was struck and damaged by a nearby truck.

On February 24, 1983, the load on his truck was not secured and the tailgate was not raised with resultant loss of a $550 weedeater.

On May 9, 1983, he grabbed the wrong lever while unloading asphalt so that the truck bed fell and injured another employee.

On August 15, 1983, he drove the truck over an unoccupied mechanic's creeper in the truck yard.

On September 2, 1983, his truck struck a gas main warning pole.

City's accident review board found most of these incidents were "preventable." City gave Green 30 minutes of training after the August 1981 parking brake incident and very little additional training. After the December 1982 incident Green was grounded for a short time and given a written reprimand. On his appeal the city manager ordered the written reprimand removed from Green's personnel file reduced to an oral reprimand. The written reprimand was never removed from Green's public service file.

Green also filed formal protests of the City's disciplining for the February 1983 and August 1983 incidents through the Oceanside City Employees' Association (Association) pursuant to a written agreement between the City and the Association. The five steps of the grievance procedure involve the right to appeal to the immediate supervisor, then to the department head, then to the city manager, then to advisory arbitration followed by discretionary review by the city council. Green's protests of the February 1983 and August 1983 incidents concluded at the department head level and the city manager level respectively.

Green did not report the September 2, 1983, incident of his truck striking a gas main warning pole. When his supervisor asked him the following workday, Monday, September 5, if he hit the pole, Green denied doing so. Green's supervisor turned the matter over to the City police department for investigation. Green admitted to the police that he had hit the pole. By letter dated September 8 Green was terminated for cause. At that time Green was on technical medical leave seeking psychological counseling. The termination letter stated in part: "It is my intention to effectuate your termination at 4:30 P.M., Friday, September 23, 1983. *You may appeal* this proposed disciplinary action to the Department Head, Glenn E. Prentice, either orally or in writing. Any such response must be made to Mr. Prentice on or before 4:30 P.M., Thursday, September 15, 1983." (Italics added.)

Green took no action to challenge his termination through the employees' grievance procedure.

### III

The City's answer to Green's amended complaint admitted it hired Green to fill a permanent position in 1970 and that Green "was thereafter subject to termination for just cause." City also admitted the covenant of good faith and fair dealing applied to the employment relationship between itself and Green. City's ninth affirmative defense was that Green's action was barred for failure to exhaust the administrative remedies available to him before

filing suit. At trial, City did not urge this affirmative defense preferring to address the merits of the case in its motions for nonsuit, judgment notwithstanding the verdict and new trial.

During argument of City's motion for nonsuit made after Green's opening statement, the trial court asked certain questions concerning administrative remedies, including "does he even have a right to be here at all, if, in fact, he did not first take advantage of his administrative remedies?" City said it would brief this issue. It failed to do so. On the record there is no indication the City addressed the subject further during trial even though it was mentioned once again in connection with an evidentiary ruling leading to a stipulation that Green filed a written claim with the City which was rejected.

DISCUSSION

I

City argues that Green's failure to exhaust his administrative remedies deprived the trial court of jurisdiction and therefore the judgment is void for lack of subject matter jurisdiction. The administrative remedy to which City refers is set forth in the provisions of the agreement between the City and Association requiring the five-step grievance procedure noted above. Green was properly notified of his right to appeal the discharge in the four-page letter of September 8, 1983, giving him notice of suspension and discharge.[1] It is clear that Green did not challenge his discharge except by this lawsuit. It is equally clear the City failed to pursue the argument even when invited to do so by the trial court. The issue we must confront, then, is whether the City can waive the defense of a failure to exhaust administrative remedies.

As a general rule where "an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act; . . ." (*Hayward* v. *Henderson* (1979) 88 Cal.App.3d 64, 70 [151 Cal.Rptr. 505].) When the issue is properly pursued, jurisdiction of the court to entertain an action for judicial relief is

---

[1] Under the agreement City may discipline employees only for just cause. (Agreement, § XI.A.) The agreement spells out procedures to be followed in imposing discipline, including giving written notice with a statement of the reason, a copy of the charges of misconduct and whenever practical a copy of the material or documents upon which the charges are based. (Agreement, §§ XI.B., XI.B.1. and XI.B.2.) The employee's right to respond is set forth as well. (*Ibid.*)

Section XII of the agreement establishes the grievance procedure, first defining a grievance as "an alleged violation of a specific clause of the Agreement." (Agreement, § XII.A.)

conditional upon a completion of the administrative procedure. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 [120 P.2d 26].) The rule applies as well when the administrative procedure is provided by regulation, resolution or ordinance. (See *Hayward* v. *Henderson, supra,* 88 Cal.App.3d 64, 68-70; see also *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 415, 417-418 [194 Cal.Rptr. 357, 668 P.2d 664]; *Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 570, 574 [206 Cal.Rptr. 738].) ■ The rationale for the rule has been explained as follows: "The administrative claim or 'cause of action' is within the special jurisdiction of the administrative agency, and the courts may act only to review the final administrative determination. Allowing a suit prior to such a final determination would constitute interference with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy is a jurisdictional element in California." (*Hayward* v. *Henderson, supra,* 88 Cal.App.3d 64, 70; see also 3 Witkin, Cal. Procedure (3d ed. 1985) § 234, pp. 264-266.)

The association of the exhaustion doctrine with the "jurisdiction" of the superior court has led to some confusion. At least one court assumed that jurisdiction in this context refers to subject matter jurisdiction and, relying on the venerable rule (see *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 773 [197 P.2d 739], overruled on other grounds in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 385 [218 P.2d 10]), concluded that the failure to exhaust administrative remedies "may be challenged at any stage of the proceeding." (*People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 57 [21 Cal.Rptr. 875]; see also *Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 963 [123 Cal.Rptr. 309].) *Coit Ranch* relied on the Supreme Court's decision in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] as the basis for its assumption that subject matter jurisdiction was involved. Even a casual reading of *Abelleira,* however, demonstrates the fallacy of the assumption.

The dispute in *Abelleira* revolved around the rule that a writ of prohibition will not issue except to restrain a lower tribunal from acting beyond its "jurisdiction." (See Code Civ. Proc., § 1102.) The question was whether the Court of Appeal exceeded its jurisdiction for the purposes of this rule when it issued a writ of mandate precluding a state agency from paying unemployment benefits before the employers challenging the payments had exhausted their administrative remedies. The Supreme Court began by considering "the meaning of the term 'jurisdiction' in its relation to the granting of a writ of prohibition. The term, used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition." (17 Cal.2d at p. 287.) After having discussed jurisdiction "in its most fundamental or strict sense" (*id.* at p. 288) which

includes a court's jurisdiction over the subject matter of the controversy or personal jurisdiction over the parties, *Abelleira* observes that "in its ordinary usage the phrase 'lack of jurisdiction' is not limited to these fundamental situations. For the purposes of determining the right to review by *certiorari,* restraint by prohibition, or dismissal of an action, a much broader meaning is recognized. Here it may be applied to a case where, *though the court has jurisdiction over the subject matter* and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Id.* at p. 288, first italics in original, second italics added.)

Having surveyed a number of circumstances in which reviewing courts concluded that a lower tribunal had exceeded its jurisdiction for the purposes of a writ of prohibition, the court summarized as follows: "The foregoing observations, while by no means a complete description of the term, nevertheless serve as a warning against a too restricted meaning. The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional. Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, *in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on certiorari.*" (*Id.* at p. 291, first italics in original, second italics added.) Applying these principles in the context of the exhaustion doctrine, the Supreme Court explained that it was "not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts. . . . *Bearing in mind the analysis of jurisdiction which has heretofore been made,* and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Id.* at p. 293, first italics in original, second italics added.)

As the *Abelleira* opinion makes explicit, its discussion of jurisdiction is solely for the purpose of determining when a writ of prohibition will issue. The court repeated on several occasions that jurisdiction in that context has a broader meaning than for other purposes. (17 Cal.2d at pp. 288, 290, 291.) Beyond that, however, it is not simply that the Supreme Court left open the

question whether exhaustion of administrative remedies involves subject matter jurisdiction; ■ *Abelleira* makes it abundantly clear that the exhaustion doctrine does *not* implicate subject matter jurisdiction but rather is a "procedural prerequisite" "originally devised for convenience and efficiency" and now "followed under the doctrine of *stare decisis,* . . ." (*Id.* at pp. 288, 291.) It is "jurisdictional" only in the sense that a court's failure to apply the rule in a situation where the issue has been properly raised can be corrected by the issuance of a writ of prohibition.

Such a conclusion only makes sense when the underlying nature of the exhaustion doctrine is considered. While *Abelleira* indicates that the rule of exhaustion of administrative remedies has become "a fundamental rule of procedure" (17 Cal.3d at p. 293), courts have repeatedly recognized it is not inflexible dogma. (E.g., *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 476 [64 Cal.Rptr. 808]; *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) ■ There are numerous exceptions to the rule including situations where the agency indulges in unreasonable delay (*Hollon, supra,* 257 Cal.App.2d at p. 476), when the subject matter lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the agency is incapable of granting an adequate remedy, and when resort to the administrative process would be futile because it is clear what the agency's decision would, be. (*Ogo Associates, supra,* 37 Cal.App.3d at p. 520; *Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 520-521 [205 Cal.Rptr. 6]; see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 238-246, pp. 269-275.) Application of these exceptions may require "a qualitative analysis on a case-by-case basis with concentration on whether a aramount need for agency expertise outweighs other factors." (*Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 981 [201 Cal.Rptr. 379]; *Truta* v. *Avis Rent A Car System* (1987) 193 Cal.App.3d 802, 811 [238 Cal.Rptr. 806].) ■ Application of a procedural doctrine subject to numerous exceptions and which may require case-by-case analysis is not the sort of issue which should fall outside the general rule of civil litigation that arguments and objections not raised and preserved in the trial court are waived on appeal. (E.g., *Dimmick* v. *Dimmick* (1962) 58 Cal.2d 417, 422 [24 Cal.Rptr. 856, 374 P.2d 824].)

In the present case, for instance, we do not know whether Green failed to pursue his administrative remedies because he believed it would be futile to do so. Perhaps the City agreed, initially, but having lost its case before a jury has now reconsidered that judgment call. We think it would be grossly unfair *to allow* a defendant to ignore this potential procedural defense at a time when facts and memories were fresh and put a plaintiff to the time and expense of a full trial, knowing it could assert the failure to exhaust administrative remedies if it received an adverse jury verdict. The exhaustion

doctrine is simply a "procedural prerequisite" (*Abelleira, supra,* 17 Cal.2d at p. 288) the City decided to forego. Having elected to put Green to his proof before a jury, the City's dissatisfaction with that result is an insufficient reason for reversal.

## II

 City claims the award of damages for emotional distress was improper because such damages were subject to the exclusive remedy rule of Labor Code section 3602 which provides in part: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, . . . the sole and exclusive remedy of the employee or his or her dependents against the employer, . . ."

There is a fundamental conceptual problem with the City's argument. The City's focus both at trial and on appeal has been on precluding award of a particular type of damages. The City never argued Green was in the wrong forum. It only said that any *damages* caused could not overlap those damages to which Green was entitled under the workers' compensation act. Thus from the trial court's perspective, the City conceded the propriety of the judicial remedy subject to any award excluding those emotional distress damages for which Green could have received workers' compensation.[2]

Section 3600 focuses on the *injury* sustained by the worker. If the injury is compensable under the workers' compensation system, section 3601 provides that compensation is exclusive. Where a single injury results in several legal categories of damage, there is no authority to suggest that some categories may be subject to the exclusive remedy bar where others are not. The focus must be on whether the injury is compensable within the meaning of section 3600.

We question whether the damages suffered by a plaintiff as a result of a wrongful termination may properly be termed an "injury" for the purposes of section 3600.[3] The Supreme Court appears to be comfortable with a rule

---

[2] To resolve this problem the court ruled "the instructions to the jury are going to have to be framed in a manner to advise the jury that they are not entitled to award any damages if they find any liability for stress for which Mr. Green may have been suffering that preceded his termination." The City later drafted such an instruction.

[3] The City relies on a Ninth Circuit case attempting to apply California law for the proposition that "an injury in the form of emotional distress caused by termination of employment is within the course and scope of an employment relationship even when the emotional distress occurs subsequent to the date of termination." (*Russell* v. *Mass. Mut. Life Ins. Co.* (9th Cir. 1983) 722 F.2d 482, 493.) Two cases are cited by the *Russell* court in support of this statement, both of which involved emotional distress accompanied by a physical disability. (See *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 535 [151 Cal.Rptr. 828];

stating that a civil suit will be barred by the exclusive remedy doctrine only if "the essence of the wrong is personal physical injury or death, . . ." (*Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 [233 Cal.Rptr. 308, 729 P.2d 743].) Even if they can, however, the reasoning of *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447] and its progeny would strongly suggest that a cause of action for wrongful termination is not barred by the exclusive remedy provisions because it rarely if ever would result in an employment "disability," a necessary predicate for workers' compensation.

In any event, the requirements of *Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91 [151 Cal.Rptr. 347, 587 P.2d 1160] preclude our consideration of the issue. In that case, plaintiff's complaint alleged assault and battery. Defendant alleged no affirmative defenses. At the close of the plaintiff's case, defendant moved for a nonsuit on the ground plaintiff's own testimony established that defendant was plaintiff's employer and that plaintiff's injuries were suffered in the course and scope of her employment. The Supreme Court held that the exclusive remedy bar did not deprive the trial court of subject matter jurisdiction to hear the case and that the defendant could waive the argument by failing to plead it as an affirmative defense. (*Id.* at pp. 96, 98; see also *Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 173 [231 P.2d 484].) The one exception to this rule, the court noted, was where the complaint itself affirmatively establishes the applicability of the workers' compensation remedy. In that case, although the defendant need not plead the bar as an affirmative defense, the argument should be raised by way of a demurrer to the complaint. (*Doney* v. *Tambouratgis, supra,* 23 Cal.3d at p. 97.)

Here, the City did not plead the exclusive remedy bar as an affirmative defense.[4] This is not a case where the applicability of the workers' compensation remedy is established on the face of the complaint. ▉ Under the rule of *Renteria* v. *County of Orange, supra,* 82 Cal.App.3d 833 as interpreted by the Supreme Court in *Cole* v. *Fair Oaks Fire Protection Dist., supra,*

---

*Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196, 206 [155 Cal.Rptr. 486].) There is nothing in *Russell* to suggest the Ninth Circuit viewed California law as precluding a civil suit for wrongful termination where, as here, there is no accompanying employment disability.

[4] Neither did the City demur to the complaint based on the exclusivity provision. The dissent suggests that the failure to demur is immaterial because a failure to state a cause of action may be raised at any stage of the proceeding, including for the first time on appeal. (See dissent, *post,* p. 240.) But a demurrer based on a failure to state a cause of action is not the same thing as one based on the exclusive remedy bar. As the Supreme Court made clear in *Doney,* a plaintiff states a common law cause of action seeking a common law remedy notwithstanding that the underlying injury is covered by the workers' compensation system. (23 Cal.3d at p. 98, quoting *Popejoy* v. *Hannon, supra,* 37 Cal.2d at pp. 173-174.)

43 Cal.3d 148, a complaint for intentional infliction of emotional distress unaccompanied by an employment disability is not barred by the exclusive remedy doctrine. ■■ At trial, counsel for the City argued this rule was inapplicable because "there is no evidence and no allegation of intentional infliction of emotional distress. And I have authority, which we have already discussed at least briefly, that negligent infliction of emotional distress is governed by the exclusive remedy provisions of the worker's [sic] compensation law." Responding, the court disagreed with counsel's view of the record: "[T]he court has impliedly found there is enough to go to the jury and that that has to do with the intentional acts of the City . . . ." In any event, it is clear both counsel and the judge agreed the applicability of the workers' compensation law turned on the facts before the jury. Accordingly, the City was not relieved of its obligation under *Doney* to plead and prove facts sufficient to establish the exclusive remedy bar.

## III

■■ City says Green failed to make out a prima facie case on either his contract action for wrongful termination or his tort action for breach of the covenant of good faith and fair dealing and accordingly the court should have granted City's motion for nonsuit which was made at the conclusion of Green's case. As noted earlier City does not say there is insufficient evidence to support the judgment. The omission of this argument is somewhat surprising since the only additional witnesses who testified after Green rested his case were the two supervisory City employees called by the City. In any event limiting our view to the evidence presented by Green which we now express in the light most favorable to him, a stronger plaintiff's case emerges.

■■ ■■ ■■ ■■ ■■ The pivotal issue at trial was well defined. City admitted Green was hired to fill a permanent position subject to termination only for just cause.[5] City also admitted the covenant of good faith and fair dealing applied to the employment relationship. Thus the jury's function was to determine whether Green was discharged for reasons other than just cause.

Green's theory at trial was simple. He claimed the City's reasons for his firing were pretextual, partially fabricated to remove him as a City employ-

[5] In the course of the trial City conceded there was a contract of employment between the City and the Association. Because of this fact and City's other concessions noted above, we reject the argument made by amicus on behalf of the Legal Advocacy Committee of the League of California Cities that a public employee cannot state a cause of action for breach of contract or for breach of the covenant of good faith and fair dealing. Our rejection of this argument is solely due to the factual posture of this case and should not be construed as our expression that as a matter of law public employees have identical rights and/or remedies for wrongful termination as private employees.

ee. The picture Green wanted to paint, and one which he accomplished, was that the City had a self-fulfilling goal to terminate him through the arbitrary and unjustified manipulation of the City's bureaucratic process.

Green testified that after receiving an honorable discharge from the Marine Corps after 23 years of service he obtained employment with the City. The employment was not grandiose. He was a janitor. As such he performed in an exemplary fashion for 11 years. In 1981 it appeared he would lose his job because the City had contracted with a private agency to clean City Hall. City wrote to him and told him his position had been eliminated. Green wanted to remain a City employee. He confronted the city manager who reluctantly told him that Green's seniority status permitted "bumping" another employee provided, however, that Green passed certain tests. These tests were ordinarily given only to entry level employees. Green passed these tests. Within the short time allotted to him, 54-year-old Green was able to carry 80 pounds of sand, shovel sand into barrels, and saw wood.

Green's new job was to drive special vehicles. City regulations required him to satisfactorily demonstrate his familiarity with the operation of the vehicle. Inexplicably Green was not asked to do so. Equally strange was the fact that he received no training. Green promptly had an accident. After pulling a lever on the dump truck which he reasonably assumed was the emergency brake, the truck rolled causing minor damage to another vehicle. Green had not been told that he was required to turn on the micronite switch on the dashboard to activate the emergency brake. He had never even heard of a micronite switch. Even though this August 31, 1981, incident was found to be due to supervisor negligence, the incident was reported in Green's file as a preventable accident. Green was reprimanded. His supervisor was not.

Green suffered additional disparate treatment following the next incident which occurred 16 months later, December 17, 1982. Hunt, a coemployee, drove his vehicle into the door of Green's truck. Green was grounded; Hunt was not.

Green's concern with the different treatment he had received motivated him to challenge the written reprimand of the February 24, 1983, incident. He successfully convinced the city manager to change the written reprimand to an oral reprimand. The written reprimand was ordered removed from Green's file. It was not. Ultimately, that written report was used as a factor to terminate Green.

There is no need for us to review the remaining incidents. Our partial description of the facts permits us to analyze City's contention that the court erred in denying its nonsuit motion.

We reject City's argument that *Crosier* v. *United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132 [198 Cal.Rptr. 361] unequivocally establishes the court's prejudicial error. Unlike *Crosier* Green's testimony was more than mere suspicion of improper motives based only on conjecture and speculation. Green's anxiety and concerns were justified. ██ The testimony of a single witness, even a party, is sufficient to establish a fact. (See, e.g., *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) ██ The court recognized there was nothing inherently improbable or conjectural about Green's testimony. It realized a jury could reasonably find Green credible and if so there would be substantial evidence to support the judgment.

The court's explanation for denying City's motion was that City had overstated what had occurred as an excuse to terminate Green. The court ruled the "possibility of intention on the part of the City" was sufficient to permit the case to go to a jury to "consider the damages that may [have been caused by] the alleged intentional act of violating the covenant of good faith and fair dealing." The ruling is factually supported. The court did not err.

## IV

██ City claims the court improperly instructed the jury that they could substitute their own judgment for that of the employer. City directs us to the following instructions which were given by the court: " 'The terms "just cause" and "good cause" for termination of an employment means "a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power." ' " and,

" 'The question of what is or is not good faith and fair dealing between an employer and an employee, or what constitutes "good cause" for termination is for you to decide in light of the evidence and law in this case.' "

City says its instructions which the court refused to give would have properly informed the jury on the role of managerial discretion in employer-employee relations. City's proposed instructions were:

"*Special Instruction No. 3:*

"When an employment relationship permits the employer to discharge the employee if the employee's job performance is not satisfactory, the employer is the sole judge of his satisfaction. But the employer must demonstrate that he believed in good faith that the job performance was unsatis-

factory. And you, the jury, may not substitute your judgment for that of the employer.

*"Special Instruction No. 4:*

"The terms 'just cause' and 'good cause' for termination of an employment mean[s] 'a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power.' In deciding this issue, you must take care, however, not to interfere with the legitimate exercise of managerial discretion by the employer.

*"Special Instruction No. 5:*

"The right to discharge for just cause excludes discharge for mere whim or caprice. It includes the traditional causes of discharge in the particular trade or industry, the practices which develop in the day-to-day relations in management and labor, and the decisions of courts and arbitrators. An employee's breach of the duties owed by employees to management is just cause for discharge, including such duties as honesty, obedience, and safety. Just cause which will justify a discharge should be in connection with the work, and should reflect a willful disregard by the employee of the employer's interest. Thus, any conduct, action, or inaction by an employee which arises out of, or is directly connected with the work, and which is inconsistent with an employee's obligation to his employer under his contract of hire or union contract might very well be determined to be just cause."

Before we can determine whether there is merit to City's specific claim of instructional error we must examine all of the jury instructions given to the jury. Here the jury knew that Green was trying to prove there was no just cause for his termination and that the reasons asserted by the City were merely pretextual. In effect this was an all or nothing case. Either there was a valid reason to dismiss Green or there was not. In this framework the jury was told Green had "the burden of establishing by a preponderance of the evidence all of the facts necessary to prove a breach of that contract by the defendant's wrongful discharge of plaintiff, without good or just cause; . . ." The "just cause" for termination was whether the City had a legitimate basis for its action or whether it had fabricated the reasons solely to justify Green's termination. The jury was also told that it was the plaintiff who had "the ultimate burden of proving that he was terminated wrongfully."

There is nothing in these instructions which suggest the jury could substitute its judgment for that of the City. There was also nothing in the entire case which created such a risk. As noted below (see fn. 6, *post,* p. 229) the

issue of the City's mistaken, good faith belief in discharging Green was never raised and accordingly the scope of managerial discretion which allows for managerial errors was never an element for the jury to consider. The jury's responsibility was to decide whether there was a legitimate basis for the City's action or whether the discharge was based on fabricated reasons designed to terminate Green. ██ ██ ██ Thus because of the narrow way in which the case was presented to the jury we conclude the court did not err in rejecting City's special instructions.[6]

V

██ City's concluding argument is a broad-brush attack on the judgment based on the claim that public policy and fundamental fairness demand this judgment be reversed. In making this demand City repeats each of its earlier arguments and concludes with the statement that "Green's entire case was an appeal to the bias and prejudice of the jury, unsupported by evidence of wrongful conduct on the part of his supervisors."

The form of this opinion and the views expressed by the panel should reflect the attention we have given this case and our concern with the fundamental fairness of the result achieved. While we admit that this case is procedurally unique because City neither raised nor argued potentially applicable legal defenses, the result is not unfair. There is no unfairness associated with a trial on the merits in a public forum which illuminates the process of government. There is no unfairness associated with allowing the adversarial process to work before an able, conscientious and experienced judge who in an evenhanded and thoughtful manner correctly resolved the issues as they were presented to him.

The apparent unfairness to which City refers may be its belated recognition that had different tactical decisions been made, a different result might

---

[6]The jury instructions failed to instruct that City's mistaken, but good faith belief that Green's termination was justified, precluded Green from recovering on his cause of action for breach of the covenant of good faith and fair dealing. (See *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1171 [226 Cal.Rptr. 820].) The City did not raise this issue at any time. Accordingly, any error related to this issue has been waived.

City also has not raised the problem created by the court's instruction that City's justification in firing Green was an affirmative defense on which it had the burden of proof. Presumably, and we think correctly, City is satisfied that any instructional error on this point was harmless. Again, since this issue was not raised, there is no need for us to discuss it.

We have also reviewed the product of the BAJI Committee's recent efforts to draft standard instructions on the many difficult issues presented in wrongful termination cases. (See new (1987) BAJI instructions Nos. 10.00, 10.10, 10.11, 10.13-10.16, 10.31, 10.33, 10.34, 10.41-10.43, 10.51-10.54.) Without expressing a view on the correctness of these instructions we think it noteworthy that they do not require the jury to be told about the scope of managerial discretion.

have been reached. City's frustration with the result, however, does not mean the justice system failed to function properly. There has been no error in the judicial process.

## DISPOSITION

Judgment affirmed.

Butler, J., concurred.

**TODD, J.**—I respectfully dissent.

The City of Oceanside (City) appeals a $125,000 judgment entered after a jury returned its verdict in favor of William Green on his amended complaint for damages for breach of contract by wrongful termination and for violation of the covenant of good faith and fair dealing. City asserts: the trial court lacked jurisdiction because Green failed to exhaust his administrative remedies; Green's exclusive remedy for emotional distress was a workers' compensation claim; the jury was improperly instructed that it could substitute its own judgment for that of the employer on what is or is not good faith and fair dealing and what constitutes good cause for termination; and the trial court erred in not granting City's nonsuit motion because Green did not present evidence sufficient to make out a prima facie case of wrongful termination.[1] Finding merit in City's arguments on exhaustion of administrative remedies, the exclusive remedy doctrine, and jury instructions, I would reverse.

My colleagues have presented a thorough review of the pertinent facts, and I adopt parts II and III of the majority opinion here.

## DISCUSSION

### I

City's contention Green failed to exhaust his administrative remedies thus depriving the trial court of jurisdiction is founded on the provisions of the agreement, effective between July 3, 1983, and June 30, 1985, between the City and Oceanside City Employees' Association (association) setting forth the five-step grievance procedure and the undisputed evidence that

---

[1] I am aided in reaching my views by an amicus curiae brief in support of the City filed on behalf of the League of California Cities, Legal Advocacy Committee, by Edward J. Cooper, City Attorney of Santa Ana. Seven additional cities and their city attorneys have requested to join in the amicus brief.

Green did not challenge his discharge except by this lawsuit.[2] City also points out Green was properly notified of his right to appeal the discharge in the four-page letter of September 8, 1983, giving him notice of suspension and discharge.[3]

The well established rule, as the majority states, is that "[w]hen an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act; this is 'not a matter of judicial discretion, but is a fundamental rule of procedure . . . .' (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 . . .; see also *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 . . . .)" (*Hayward* v. *Henderson* (1979) 88 Cal.App.3d 64, 70 [151 Cal.Rptr. 505].) "Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure." (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 [120 P.2d 26].) The rule applies as well when the administrative procedure is provided by regulation, resolution or ordinance. (See *Hayward* v. *Henderson, supra,* 88 Cal.App.3d 64, 68-70; see also *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 415, 417-418 [194 Cal.Rptr. 357, 668 P.2d 664]; and see *Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 570, 574 [206 Cal.Rptr. 738].) A brief explanation of the rule is: "The administrative claim or 'cause of action' is within the special jurisdiction of the administra-

---

[2] Green testified: "Q. Well, did you file a formal protest with the City as a result of your termination?

"A. No, sir.

"Q. Mr. Green, after the Hunt incident in December of 1982 and after the weed eater incident in February of 1983 and after the Gest incident in May of 1983, and after the creeper incident in August of 1983, after each one of those incidents, you filed a grievance or a protest with the City; did you not?

"A. Yes, sir.

"Q. But on the occasion of your termination, you didn't file any protest at all?

"A. No, sir."

[3] Under section X.A. of the Agreement, discharge is specified as a form of disciplinary action available for employee misconduct. Causing damage to or waste of public property through misconduct or negligence and deliberate dishonesty related to the performance of an employee's duties are among the definitions of misconduct in the Agreement. (Agreement, §§ X.A.3., X.A.8.) In the agreement, City agrees that employees will be disciplined only for just cause. (Agreement, § XI.A.) The Agreement spells out procedure to be followed in imposing discipline, including giving written notice with a statement of the reason, a copy of the charges of misconduct and whenever practical a copy of the material or documents upon which the charges are based. (Agreement, §§ XI.B., XI.B.1. and XI.B.2.) The employee's right to respond is set forth as well. (Agreement, § X1.B.3.)

City's Code section 23.44 makes similar provisions regarding notice and right to respond.

Section XII of the Agreement establishes the grievance procedure, first defining a grievance as "an alleged violation of a specific clause of the Agreemnt [*sic*]." (Agreement, § XII.A.)

It thus clearly appears this grievance procedure applies to City's action of discharging Green for the misconduct alleged in the September 8, 1983, letter, which specifically cites Agreement sections X.A.3., X.A.8., X.A.11., X.A.13. and X.A.14. as the misconduct on which the disciplinary action of discharge is based.

tive agency, and the courts may act only to review the final administrative determination. Allowing a suit prior to such a final determination would constitute interference with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy is a jurisdictional element in California. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 181, p. 1045[4].)" (*Hayward* v. *Henderson, supra,* 88 Cal.App.3d 64, 70.)

At this point I depart from the majority's view of the exhaustion of administrative remedies doctrine. I believe there is no error in the views of many courts, including this court (see *Jacobs* v. *Retail Clerks Union, Local 1222, supra,* 49 Cal.App.3d at p. 963 [123 Cal.Rptr. 309]), that *Abelleira* announced a rule of subject matter jurisdiction. "Jurisdiction to entertain an action . . . conditioned upon a completion of the administrative procedure," as referred to in *United States* v. *Superior Court, supra,* 19 Cal.2d 189, 194, is rather clearly a reference to subject matter jurisdiction. *Abelleira* and the passage from *Hayward* v. *Henderson, supra,* 88 Cal.App.3d 64, 70, speaking of "interference with the subject matter jurisdiction of another tribunal" imply rather directly that the underlying rationale of the exhaustion doctrine is the separation of powers of the judicial branch of government from the executive branch. It is fundamental that neither branch properly may interfere in advance with the lawful functions of the other. (Cal. Const., art. III, § 3; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141 [93 Cal.Rptr. 234, 481 P.2d 242]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 75, pp. 3312-3313.) That these are side benefits of judicial and administrative economy in the proper application of the rule does not furnish the primary basis for the rule. I cannot consider the exhaustion doctrine as merely a "procedural" rule subject to waiver on appeal if not properly raised in the trial court. It is a rule of subject matter jurisdiction albeit there are exceptions to the rule. If the conditions are present to permit an exception, the proper conclusion is that the jurisdictional exhaustion doctrine does not apply. The presence of an exception to the rule does not lead to the conclusion, as the majority suggests, that the rule is not one having to do with subject matter jurisdiction.

Exceptions to the rule requiring exhaustion of administrative remedies occur when the subject of the controversy lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the administrative agency cannot grant an adequate remedy, and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. (*Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 520-

[4]See now 3 Witkin, California Procedure (3d ed. 1985) Actions, section 234, pages 264 to 266.

521 [205 Cal.Rptr. 6]; and see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 238-246, pp. 269-275.) However, on the record before this court there is no basis for application of any such exception to this case. Green had successfully pursued the grievance procedure in earlier disputes and he makes no showing here that his appeal of the termination notice would have been futile.

Thus, failure to exhaust administrative remedies "deprives a court of subject matter jurisdiction (*Holderby* v. *Internat. Union etc. Engrs.,* 45 Cal.2d 843, 846 . . .; *American Society of Composers, Authors & Publishers* v. *Superior Court,* 207 Cal.App.2d 676, 684 . . .) . . . *lack of jurisdiction* is not subject to waiver and *may be raised at any stage of the proceedings* (*Sampsell* v. *Superior Court,* 32 Cal.2d 763, 773 . . . [disapproved on other grounds in *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379]; *People* v. *Coit Ranch, Inc.,* 204 Cal.App.2d 52, 57 . . .)." (*Jacobs* v. *Retail Clerks Union, Local 1222, supra,* 49 Cal.App.3d at p. 963 [123 Cal.Rptr. 309], italics added.) The exhaustion of remedies doctrine fully applies to actions seeking damages, including tort claims, for an allegedly wrongful termination of private or public employment endeavors. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476-477 [131 Cal.Rptr. 90, 551 P.2d 410]; *Edgren* v. *Regents of University of California, supra,* 158 Cal.App.3d 515, 520.)

An additional concept attending employment termination where there is an administrative remedy is that failure to apply for judicial review of decisions and findings of the administrative agency pursuant to Code of Civil Procedure section 1094.5 precludes a terminated employee from filing a complaint for damages. (*Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, 469; *City of Fresno* v. *Superior Court* (1987) 188 Cal.App.3d 1484, 1491 [234 Cal.Rptr. 136]; *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 122-124 [185 Cal.Rptr. 878].) Moreover, if administrative adjudication of the issue whether the employment was wrongfully terminated is unfavorable to the terminated employee, it must be *successfully* challenged by the mandamus procedure before filing a tort action based on the same alleged wrong. (*Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d at pp. 476, 483-484; *City of Fresno* v. *Superior Court, supra,* 188 Cal.App.3d 1484, 1493.)

The only grounds Green puts forth to avoid application of the exhaustion of administrative remedies doctrine are that "the evidence was incomplete . . . and the testimony was in conflict with the document discussed at R.T. 244 [and] [i]f any error was committed, OCEANSIDE induced the commission of the error and should be estopped from asserting it as a ground for reversal." On the matter of the evidentiary basis, as shown above, Green

testified with candor and clarity that he did not file any protest as a result of his termination. This admission permits no doubt as to the factual basis of City's nonexhaustion of remedies contention and makes it a matter that is undisputed. Further, Green's claim of conflict between the testimony and the "document discussed at R.T. 244" is unsupported by the record.[5] From reading the record in proper context, it is very clear the document referred to was Green's claim filed with the City under the California Tort Claims Act. (Gov. Code, § 900 et seq., §§ 910-915.4.) This had nothing to do with any pursuit of Green's administrative remedies under the agreement. On this record all that is required is the application of legal principles to undisputed facts, i.e., a determination of a question of law by the court. (See *Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 317-318 [159 Cal.Rptr. 416].)

Concerning Green's suggestion the City should be estopped to assert non-exhaustion of administrative remedies because it induced the error by not pressing the contention in the trial court, I might find merit but for the fact the rule goes to the subject matter jurisdiction of the superior court. Parties may not confer such jurisdiction by waiver or consent, and as stated, the rule is that lack of jurisdiction may be raised at any stage of the proceedings. (See *Jacobs* v. *Retail Clerks Union, Local 1222, supra,* 49 Cal.App.3d 959, 963, and cases cited; see also *Taylor* v. *Taylor* (1923) 192 Cal. 71, 78 [218 P. 756, 51 A.L.R. 1074], and *Harrington* v. *Superior Court* (1924) 194 Cal. 185, 188 [228 P. 15] ["Jurisdiction in any proceeding is conferred by law; that is, by the constitution or by statute. Jurisdiction of the subject matter cannot be given, enlarged, or waived by the parties."].) Accordingly,

---

[5] Reporter's Transcript page 244 reads: "Mr. Larabee [Green's Counsel]: I want to—

"Mr. Groszkruger [City's Counsel]: I am mystified. I don't know why I am being shown that.

"Mr. Larabee: I would like to introduce that, but I want to cover out the amount, $20 million. And I just don't want him cross-examined on the amount of that because it was sent in my [*sic*] by his attorney. But it goes to a filing of a claim with the City and also being told what to do by the City Council.

"Mr. Groszkruger: As part of the pleading requirements, plaintiff had already pled that he filed a claim and that the claim was rejected. I don't know what it proves. There is no issue regarding the fact that the City denied his claim.

"The Court: Will you stipulate for the record, then, that the plaintiff filed a claim against the City and that the City rejected the claim?

"Mr. Groszkruger: Yes.

"Mr. Larabee: And that the last part of the instruction, that he was told that he had six months to file a lawsuit?

"The Court: What does that have to do with anything?

"Mr. Larabee: Well, I don't know whether we are going to get into this administrative grievance or his failure to exhaust is [*sic*] remedies, but he has been questioned.

"The Court: If it comes in, at that time then you can raise this."

On the next page of the transcript, the court accepts City's stipulation that Green filed the claim and it was rejected.

I conclude the nonexhaustion of administrative remedies doctrine may be raised, as here, for the first time on appeal.[6] This important doctrine, well rooted in California law, is much more than "a 'procedural prerequisite.' " (See majority opn., *ante,* at pp. 221-222.)

There is apparent similarity between this case and *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162], insofar as it deals with police department employee Jacqueline Robinson. The Supreme Court set forth San Francisco's contentions in the trial court, none of which mentioned the exhaustion doctrine. Yet, affirming the denial of a writ of mandate as to Robinson who was challenging the legality of a short-term suspension for disciplinary reasons on the basis of *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], the court said: "It appears that appellant Jacqueline Robinson, an employee of the police department, had an opportunity for a postdisciplinary hearing. (S.F. Charter, § 8.343.) The complaint does not allege a demand for a hearing nor a denial of such demand. Thus, it does not appear that appellant Robinson has exhausted her administrative remedies, a prerequisite to seeking judicial relief. (*Fiscus* v. *Dept. of Alcoholic Bev. Control* (1957) 155 Cal.App.2d 234 . . . ; cf. *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 . . . .) As to appellant Robinson the complaint thus shows no ground for judicial intervention." (*Civil Service Assn.* v. *City and County of San Francisco, supra,* 22 Cal.3d at p. 565.)

It is worthy of note that the *Fiscus* case, cited as the authority for the Supreme Court's conclusion, includes the statement: "Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. (*Abelleira* v. *District Court of Appeal, supra,* p. 293; *United States* v. *Superior Court,* 19 Cal.2d 189, 194 . . . .)" (*Fiscus* v. *Dept. Alcoholic Bev. Control* (1957) 155 Cal.App.2d 234, 236 [317 P.2d 993].)

From the undisputed evidence showing Green did not exhaust his administrative remedies, I conclude the trial court was without jurisdiction to proceed with Green's action for breach of contract by wrongful termination and for violation of the covenant of good faith and fair dealing.[7]

---

[6] I caution that this conclusion should not serve as any encouragement for such a wasteful method of resolving the issue of exhaustion of administrative remedies. The jurisdictional issue properly is to be raised at the earliest opportunity in a case such as this.

[7] Having reached this conclusion, I do not consider the arguments of amicus propounding the concepts that public employment is by statute, not by contract, that the theory of wrongful discharge as a tort or implied contract is not applicable to a public entity, and that an aggrieved employee may only seek judicial relief by way of administrative mandamus.

## II

City contends the award of damages for emotional distress was improper because any such damages were subject to the exclusive remedy rule. (Lab. Code, §§ 3600, 3601, 3602.)[8] In Green's amended complaint, his second cause of action for "Breach of Covenant of Good Faith and Fair Dealing" includes a paragraph 15 which alleges: "15. *CITY's actions in this respect were willful. CITY acted with the intent to cause GREEN financial harm, severe emotional distress,* embarrassment and humiliation. *CITY* accomplished its aims." (Italics added.)

In Green's first cause of action for wrongful termination, he alleges the existence of an oral contract with the City containing specified terms of employment. He also alleges he began to work as a City employee, became a participating member of City's employment benefit programs, reasonably relied on all of City's representations, and worked for City for more than 13 years until he was wrongfully fired. The first cause of action further alleges: "7. *GREEN* performed all of the duties and obligations required of him by the terms of the parties' contract.

"8. On or about September 23, 1983, without any good cause, *CITY* breached the terms of its oral employment contract with *GREEN* by wrongfully firing him.

"9. *GREEN* is informed and believes and on that basis says he was terminated, in part, because he sustained a job-related injury.

"10. As a proximate result of *CITY's* acts, *GREEN* has been damaged in an amount he will prove with certainty at the time of his trial. *GREEN* will also seek to recover his lost retirement benefits."

---

[8] Labor Code section 3600 provides that liability for compensation under the Workers' Compensation Act where the described conditions of compensation exist is "in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558 . . . ." (Subd. (a).) Section 3600 also refers to "specific exemptions to the employee's exclusive remedy set forth in subdivision (b) of Section 3602 . . . ." (Subd. (b).)

Labor Code section 3601 provides that where the conditions of compensation concur, the right to recover compensation against another employee is, subject to two exceptions, "the exclusive remedy for injury or death of an employee . . . ." (Subd. (a).)

Labor Code section 3602, specifically setting forth the exclusive remedy rule with respect to suits against employers, provides in part: "(a) Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer also occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer."

Green incorporates these allegations into his second cause of action for breach of the covenant of good faith and fair dealing and alleges, in pertinent part: "14. *CITY* breached this covenant in the following respects:

"A. *CITY* wrongfully fired *GREEN* depriving him not only of his right to earn a living, but also the full value of his retirement benefits;

"B. *CITY* decided to fire *GREEN* because he was critical of certain *CITY* activities and employees. As a result of its preconceived decision to terminate *GREEN*, *CITY* papered its file with untrue, exaggerated and partially fabricated criticisms of *GREEN*'s performance; and

"C. *CITY* attempted to pressure *GREEN* to voluntarily resign and when *GREEN* refused to do so, *CITY* fired him."

There followed the allegations City acted with intent to cause Green emotional distress and accomplished its aims. Part of the prayer of *GREEN*'s amended complaint is for "damages caused by the severe emotional distress suffered by *GREEN*."

City did not raise the exclusive remedy defense in its answer. However, *CITY* moved to exclude evidence of emotional distress damages based on the exclusive remedy rule. In the hearing on the motion conducted with City's second motion for nonsuit, the trial court said: "[T]he instructions to the jury are going to have to be framed in a manner to advise the jury that they are not entitled to award any damages if they find any liability for stress for which Mr. Green may have been suffering that preceded his termination." Green agreed to this instruction. The trial court also ruled: "[T]he Court will permit the jury to consider the damages that may arise out of the alleged intentional act of violating the covenant of good faith and fair dealing."

Earlier in the trial, during argument of City's first motion for nonsuit after Green's opening statement, City also moved to exclude evidence of emotional distress or stress during Green's employment. The court then pointed out Green's case was "not an intentional infliction of emotional distress case," after which Green's counsel assured the court he was "only concerned with the emotional distress that occurred after the termination" and "I am going to only present evidence of emotional distress that has been suffered after termination." The court did not rule on City's evidentiary motion at that time, instead asking counsel for more argument and briefing on the subject. Evidence of Green's workers' compensation claim was admitted later during the trial.

The jury was instructed that emotional distress damages were recoverable only for post-termination distress. The City offered this instruction.

In sum, this is a case in which Green does not state a cause of action for infliction of emotional distress but instead seeks recovery for emotional distress as a part of his breach of the covenant of good faith and fair dealing cause of action. On the other hand, City has not raised the exclusive remedy defense in its answer and has done so only by way of its motions to exclude evidence of emotional distress during the existence of the employment relationship. Finally, the view of the trial court that this is not an intentional infliction of emotional distress case is not challenged, and I accept this posture of the case. It is thus clear that the exception from the exclusive remedy rule for certain cases of intentional infliction of purely emotional distress without physical injury or disability (see *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155-156 [233 Cal.Rptr. 308, 729 P.2d 743]; *Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833, 838 et seq. [147 Cal.Rptr. 447]) does not apply to this case. Nor is there any concern in the case for any form of emotional distress that may have occurred before Green's employment terminated (see *Spratley* v. *Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408, 1414 [234 Cal.Rptr. 121]). The basic force and thrust of Green's theory concerning emotional distress is that as a result of City's conduct during the employment relationship he suffered emotional distress after that relationship terminated.

On the matter of preserving the exclusive remedy defense, *Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 96-97 [151 Cal.Rptr. 347, 587 P.2d 1160], sets forth the rule: "It has long been established in this jurisdiction that, generally speaking, a defendant in a civil action who claims to be one of that class of persons protected from an action at law by the provisions of the Workers' Compensation Act bears the burden of pleading and proving, as an affirmative defense to the action, the existence of the conditions of compensation set forth in the statute which are necessary to its application. (*Popejoy* v. *Hannon* (1951) 37 Cal.2d 159, 173 . . .; see also *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 361, fn. 1 . . .; *Coleman* v. *Silverberg Plumbing Co.* (1968) 263 Cal.App.2d 74, 79 . . .; *Ramey* v. *General Petroleum Corp.* (1959) 173 Cal.App.2d 386, 401 . . .; see generally 2 Witkin, Summary of Cal. Law (8th ed. 1973) p. 863; Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 17.23, p. 630.) 'The employee is pursuing a common law remedy which existed before the enactment of the statute and which continues to exist in cases not covered by the statute. It is incumbent upon the employer to prove that the Workmen's Compensation Act is a bar to the employee's ordinary remedy.' (*Popejoy* v. *Hannon, supra,* 37 Cal.2d 159, 173-174.)

"An exception to this general rule of pleading and proof by the defendant appears in the situation where the complaint affirmatively alleges facts indicating coverage by the act. Then, unless the complaint goes on to state additional facts which would negative the application of the act, no civil action will lie and the complaint is subject to a general demurrer. (*Singleton* v. *Bonneson* (1955) 131 Cal.App.2d 327, 331 . . .; see also *Coleman* v. *Silverberg Plumbing Co., supra,* 263 Cal.App.2d 74, 79; *Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 540, 544 . . .; see generally 2 Witkin, Summary of Cal. Law, *supra,* p. 863.)" (Fn. omitted.)

Here, the exception applies for a situation in which coverage by the Workers' Compensation Act is affirmatively alleged and no additional factual allegations negative application of the act. The proof is consistent with the allegations. As mentioned, there is no other source of the emotional distress after Green's termination than City's actions which occurred during the employment relationship. City may assert the exclusive remedy rule without having affirmatively pleaded the defenses in its answer.

California law has been read as holding "that an injury in the form of emotional distress caused by termination of employment is within the course and scope of an employment relationship even when the emotional distress occurs subsequent to the date of termination." (*Russell* v. *Mass. Mut. Life Ins.* Co. (9th Cir. 1983) 722 F.2d 482, 493, citing *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 534 [151 Cal.Rptr. 828] and *Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196, 201-203 [155 Cal.Rptr. 486].[9] ) Since the only injury Green asserts for emotional distress is that which occurred after the employment relationship

---

[9]The Ninth Circuit, in *Russell,* held that plaintiff Russell's state law causes of action for negligent and intentional infliction of emotional distress arising out of her employer's handling of her disability benefits by suspending the benefits for a time were preempted by the Employee Retirement Income Security Act of 1974 (ERISA; see 29 U.S.C.A. §§ 1109(a), 1132(a)). (*Russell* v. *Mass. Mut. Life Ins. Co., supra,* 722 F.2d at p. 493.) However, *Russell* held that while plaintiff's cause of action for negligent infliction of emotional distress arising from the termination of her employment was barred by the exclusive remedy rule under the California Workers' Compensation Act, plaintiff's intentional infliction of emotional distress cause of action arising from the termination of her employment was not similarly barred. (*Id.* at pp. 493-495.) Plaintiff had alleged she suffered emotional injury accompanied by physical effects. (See *Renteria* v. *County of Orange, supra,* 82 Cal.App.3d 833, 842.)

The United States Supreme Court reversed the Ninth Circuit's judgment. (*Massachusetts Mut. Life Ins. Co.* v. *Russell* (1985) 473 U.S. 134 [87 L.Ed.2d 96, 105 S.Ct. 3085].) The Ninth Circuit had held that ERISA authorized not merely contractual damages for loss of plan benefits but also damages for all losses and injuries sustained as a direct and proximate cause of the breach of fiduciary duty, including damages for mental or emotional distress and punitive damages. (473 U.S. at p. 138 [87 L.Ed.2d at p. 101, 105 S.Ct. at p. 3088.) Referring to the damages as "extra-contractual damages," our highest court held that under ERISA there is no "cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims." (*Id.* at p. 148 [87 L.Ed.2d at p. 107, 105 S.Ct. at p. 3094.)

terminated and since this could only relate to nonintentional, pretermination conduct for which City could be held liable, i.e., under facts indicating coverage by the Workers' Compensation Act, it is to be concluded Green did not allege or prove facts sufficient to state a cause of action. A complete failure to state a cause of action may be raised for the first time on appeal. (See Code Civ. Proc., § 430.80, subd. (a); 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 315, p. 326; and see *Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6].)

In this contention, I note the dissent in *Doney* v. *Tambouratgis, supra,* 23 Cal.3d 91, 100-101, expresses the view that the exclusive remedy rule raises a question of subject matter jurisdiction which may be raised for the first time on appeal. Writing for the dissent, Justice Richardson stated, in part, "if plaintiff's injuries arose out of, and in the course of, her employment with defendant (and the majority does not dispute that fact), the trial court herein lacked jurisdiction over the subject matter of plaintiff's action." (*Id.* at p. 100.) In light of the legislative changes to Labor Code section 3602, among other sections, made since the 1979 *Doney* decision reflecting clearer language of legislative intent regarding the exclusive remedy rule (Stats. 1982, ch. 922, §§ 3-5, pp. 3365-3366, eff. Jan. 1, 1983), in my view the position of the dissent in *Doney* is strengthened.

To the extent the post-termination emotional distress which Green asserts could possibly be viewed as coming within an independent theory of recovery for emotional distress, it is clear Green did not state a cause of action to support this theory. (See *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, 155, fn. 7, setting forth elements of cause of action for intentional infliction of emotional distress; and see *Soto* v. *Royal Globe Ins. Corp.* (1986) 184 Cal.App.3d 420, 430 [229 Cal.Rptr. 192].) Rather, Green asserted his post-termination emotional distress was a result of the breach of the covenant of good faith and fair dealing, and he cites no City conduct after his termination that would support a cause of action for intentional infliction of emotional distress. Accordingly, there is a complete failure to state such a cause of action, even viewing Green's emotional distress case under an independent theory.

*Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148, 160, points out "disabilities caused by stresses in the workplace are compensable [under the Workers' Compensation Act] whether or not the employer was at fault." *Cole* dealt with a physical disability case rather than a pure emotional distress situation and involved a case that arose before the exclusive remedy statutes were changed effective January 1, 1983 (Stats. 1982, ch. 922, *supra*). Yet, I believe its test for application of the exclusive remedy rule , that is, whether the acts complained of were "a normal part of the

employment relationship" (43 Cal.3d at p. 160, citing as examples, "demotions, promotions, criticism of work practices, and frictions" (*ibid.*)) should be applied to a case such as Green's. It is clear his discharge fits within this test. It is equally clear Green's case does not involve "conduct of an employer having a 'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles. [Citations.]" (*Cole, supra,* 43 Cal.3d at p. 161.) All of City's conduct of which Green complains in his suit for breach of the covenant of good faith and fair dealing was a normal part of the employment relationship. Thus, City's conduct was within the application of the exclusive remedy rule.

I conclude City properly may raise the exclusive remedy rule for the first time on appeal. Further, the pleadings and proof, as delineated by the parties and the trial court, demonstrate Green does not state a cause of action allowing recovery for emotional distress because the exclusive remedy rule applies.

### III

Having reached the foregoing conclusions in parts I and II of this dissent, I would not ordinarily address any of the remaining issues the City raises since it would be unnecessary to do so. However, in light of the majority resolution of the instructional issue with which I disagree, a brief statement of my position is here presented:

The jury was instructed: "The terms 'just cause' and 'good cause' for termination of an employment mean a fair and honest cause or reason regulated by good faith on the part of the party exercising the power.

"The question of what is or is not good faith and fair dealing between an employer and employee, or what constitutes 'good cause' for termination is for you to decide in light of the evidence and law in this case."

As the majority points out, these instructions must be considered in the context of all of the instructions given, including the instructions on Green's burden to prove "a breach of that contract by the defendant's wrongful discharge of plaintiff, without good or just cause" and "that he was terminated wrongfully." I nevertheless believe, viewed in this context, the given instructions leave the jury with unguided power to determine the nature and presence or absence of "good cause" without recognition of the employer's right to make a "legitimate exercise of managerial discretion." (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 330, fn. omitted [171

Cal.Rptr. 917].) The second sentence of City's requested special instruction No. 4, reading, "In deciding the issue, you must take care, however, not to interfere with the legitimate exercise of managerial discretion by the employer," given immediately after the first sentence defining "just cause" and "good cause" as quoted above, would have properly tempered the definition so as to prevent an unbridled jury determination ignoring the employer's managerial discretion as recognized in *Pugh*. Given the facts of this case, I deem the error in not giving this requested instruction as creating a reasonable probability of a different result, thus calling for reversal. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *Williams* v. *E. W. Robinson Van Lines* (1955) 46 Cal.2d 14, 17-18 [291 P.2d 453].)[10]

Finally, I would comment on the dilemma faced by the experienced trial judge in this case. Recognizing vitality in City's affirmative defense raising the exhaustion of administrative remedy issue, the court sought City's argument and briefing thereon. Inexplicably, City failed to perform its agreement to supply further briefing and never mentioned the matter again. In light of City's concessions concerning the covenant of good faith and fair dealing, most trial judges would have followed the course taken below. But for the extreme importance of the issues upon which I dissent, I would gladly have left City in the position in which it worked so hard to place itself.

I would reverse.

Appellant's petition for review by the Supreme Court was denied October 29, 1987.

---

[10] I wish to note in connection with both of Green's causes of action relying upon an underlying contract of employment that since City has admitted a covenant of good faith and fair dealing applies to the employment relationship between Green and City, it is not appropriate in this case to discuss the arguments of amicus that public employment is by statute, not by contract, and the theory of wrongful discharge as a tort or implied contract is not applicable to a public entity.

In light of the conclusions I have reached, I do not address City's remaining contention of error in denying City's motion for nonsuit.